332 P.2d 465

Applications of W. H. TEMPLETON, RA-3355; Greer Brothers, E. H. Greer and Grace Greer Cole, RA-3356; and Hal Bogle, RA-3357, Appellees,

v.

PECOS VALLEY ARTESIAN CONSERVANCY DISTRICT, Appellant,

and

S. E. Reynolds, State Engineer of the State of New Mexico, Appellant.

No. 6257.

Supreme Court of New Mexico.

Nov. 26, 1958.

John F. Russell, Roswell, for protestant-appellant.

Fred M. Standley, Atty. Gen., Charles D. Harris, Sp. Asst. Atty. Gen., for respondent-appellant.

C. R. Brice, H. C. Buchly, Roswell, for appellees.

H. VEARLE PAYNE, District Judge.

This is an appeal from a judgment of the District Court of Chaves County. The appellees filed with the State Engineer their applications to drill wells in the Roswell Shallow Water Basin. Although these were on the usual forms for applications to appropriate underground waters, it was agreed by all of the parties that in effect these applications constituted applications for the changing of the point of diversion of waters from points in the Rio Felix to points in the Valley Fill of the Roswell Shallow Water Basin. The applications were denied by the State Engineer, and an appeal was perfected to the District Court of Chaves County. Upon hearing before the District Court, judgment was entered in favor of the applicants from which the Pecos Valley Artesian Conservancy District and S. E. Reynolds, State Engineer of the State of New Mexico, have appealed.

The applications have been consolidated for the purpose of trial before the State Engineer and before the District Court, and the appeal was from the judgment of the Court in the consolidated cases.

All parties made requested findings of fact and conclusions of law. Thereafter, the Court made its findings of fact and conclusions of law.

For the purpose of this appeal, the protestant and the State Engineer will be referred to as appellants and the applicants will be referred to as the appellees.

In order to shorten this opinion, the findings of fact of the trial Court will not be set forth in full. The facts which are pertinent to this opinion will be set forth as briefly as possible.

The ownership of the land, the description thereof, water rights appurtenant thereto, and other related matters are not in controversy. The water rights of the appellees were to irrigate certain land out of the Rio Felix. The amount of water in the Rio Felix has decreased in recent years for the reasons hereinafter mentioned, so that the water in the river is insufficient to irrigate the land of the appellees and they have applied for permits to drill wells to supplement this water to the extent necessary to produce the amount of water originally appropriated.

It is the contention of the appellants that this constitutes a new appropriation of water, and that it will impair existing rights, which contentions are denied by the appellees. In order to understand the contentions, it will be necessary to set forth certain facts and background concerning the waters and water rights involved.

The Rio Felix is a small water course which crosses Chaves County from the west toward the east, and empties into the

Pecos River. There are two underground bodies of water in this area. The deepest one is known as the Roswell Artesian Basin, and the upper body of water is known as the Roswell Shallow Water Basin. These two bodies of water are separated by impervious red shale and gypsum, known as the Pecos Red Beds. Below the Pecos Red Beds is the body of artesian water and above the Pecos Red Beds is the Roswell Shallow Water Basin. Above the Pecos Red Beds and spreading over the basin is what is known as the Valley Fill which consists of topsoil, sand, gravel, shale, clay, and boulders which have been washed in and deposited through the centuries. The Shallow Water Basin is held in this Valley Fill and varies in thickness from nothing on the west to two hundred and fifteen feet or more on the east.

The Rio Felix channel passes across this Valley Fill and at places is as deep as twenty-five feet or more into the Valley Fill. The water flow of this river, except for flood waters, rises into the channel from the Valley Fill wherever the waters of the Shallow Basin are higher than the bed of the river.

The Rio Felix is a stream that heads in the foothills of the Sacramento Mountains and runs down to the Pecos River. It is not a continuous stream except in flood times. The waters that fall on the headwaters of the stream run for a distance and then they lose themselves in the ground. In other words, the headwaters of the Rio Felix sink and become a part of the Valley Fill except for the times when the stream is in flood stage. The Court found as a fact as follows, to wit:

"All of the water flow of the Rio Felix (except flood water) rises into its channel from the Valley Fill, by pressure at all places where the water bearing material of the Valley Fill is higher than the bed of the Rio Felix."

The Court further found that the appropriations of water by the applicants from the Felix river were in effect appropriations from the Valley Fill.

Until the year 1952, the flow of the Rio Felix supplied enough water for the irrigation of the lands involved, but about that time the water table began to lower materially, and thus decreased the amount of water which, except for floods, flowed into the Rio Felix, so that the appellees have been unable to secure sufficient waters from the river to properly irrigate their lands. This decrease in the water table was due to the pumping of water from irrigation wells which have been drilled into the Shallow Water Basin in later years, aggravated by several years of drouth.

The water which makes up the Shallow Water Basin comes from precipitation, leakage from the artesian basin, return water from irrigation, and a small amount of leakage from irrigation canals.

It is felt that it might be well to set forth a few of the findings of fact verbatim for a clearer presentation of the findings of the lower court. Some of these findings are as follows:

"(11) There is no difference between the source of water supply of the applicants and that of the appropriators of water by means of wells drilled into the Valley Fill, as the water of the Valley Fill is the source from which the waters of applicants and the waters appropriated by means of wells are obtained; and applicants have the prior right to the use of such water."

"(14) The granting of applicants' applications will only restore the flow of water to the amount appropriated, and is in effect a change of place of diversion; and the drilling of such wells, and the use of water therefrom, will not impair existing rights; or be detrimental to the rights of others having valid existing rights to the use of water from the Valley Fill of the Roswell Underground Water Basin."

There were findings concerning the priorities of the water rights which will be discussed hereafter, and findings concerning the establishment of the basin and the fact that it was closed by an order of the State Engineer on August 1, 1937, so that no further appropriations are to be made.

The Court concluded that the water of appellees appropriated from the natural flow of the Rio Felix included the waters in the Valley Fill that would have naturally reached the river, except for the acts of subsequent appropriators. The Court further concluded that the restoration to the appellees of the quantity of water originally appropriated by means of wells sunk into the Valley Fill at the locations designated by the appellees, cannot and does not impair any other water right.

As a result, the foregoing judgment was entered in favor of the appellees authorizing them to drill the wells mentioned above.

In the brief-in-chief, filed herein, the appellants set up three points. Under point three, it was stated that such point was the only ultimate issue to be resolved. In the argument before this Court there was a certain amount of argument concerning points one and two. However, in the reply brief filed by the appellants after the argument, the appellants again stated that their point three stated the only ultimate issue to be resolved. It is taken for granted that the appellants have abandoned their point one to the effect that the District Court had no jurisdiction to hear the case, de novo. Hence, that point will not be passed upon.

Point two raised by appellants was to the effect that the applications were in effect requests for new appropriations out of an underground basin and were requests to supplement surface water rights by under-

ground rights out of a basin which is already fully appropriated. This point further stated that applicants had slept on their rights and were estopped to claim any of the waters of the basin by their failure to apply for permits to pump water from the basin before it was officially closed to further appropriation, and their failure to protest the applications that were filed and granted. There is considerable duplication in points two and three and so the Court will confine itself to the ultimate issue mentioned.

Point three read as follows, to wit:

"Point III. The granting of the subject applications which would allow a transfer of water rights from a stream to a fully appropriated ground water basin would impair existing rights. Sub-Point A. In determining whether existing rights would be impaired, neither the State Engineer nor the District Court on appeal have jurisdiction to adjudicate priority."

The contentions of the appellants as understood by the Court may be summarized as follows:

1. That the Court's Finding of Fact No. 14, above, is not supported by substantial evidence.

2. The proposed change of point of diversion amounts to a new appropriation in an underground basin that is fully appropriated.

3. It amounts to a change of a right from a river or surface water right to an underground water right.

4. That the change of point of diversion would impair existing rights.

5. That the Court has no jurisdiction to consider priorities in an application to change point of diversion, the question being limited to a consideration of whether or not it would impair existing rights.

Before discussing the above mentioned matters specifically, it might be well to mention the theories of this case and the position of the trial Court relative thereto.

The appellants have tried the case and make their contentions on the theory that the waters of the Rio Felix are surface waters and that they are distinct and separate from the underground waters of the Roswell Shallow Water Basin referred to as the waters of the Valley Fill. On the other hand the appellees tried the case and make their contentions on the theory that the source of their water, except flood water, is the Valley Fill and that they have the right to pursue it by drilling wells into the Valley Fill provided it does not impair existing rights therein.

The kernel of this case then is the question of whether, under the findings of fact made by the Court, if allowed to stand, the source of the water rights belonging to the appellees is the Valley Fill and if the ap-

pellees have the right to pursue the water and remove it from the Valley Fill.

■ The findings of fact made by the trial Court are binding upon this Court unless they are set aside by this Court.

In the brief-in-chief of the appellants, there were no attacks made upon any of the findings of fact. In the reply brief of the appellants they have attacked Finding of Fact No. 14, above. Appellants submit that it was through inadvertence that this finding was not attacked in the brief-in-chief, and they ask this Court to consider it under our broad power to disregard any error or defect in the pleadings or proceedings if it does not affect any substantial right of the adverse party. Whether or not it will affect a substantial right of the adverse party is immaterial in the light of what we have to say about the finding.

■ A finding will not ordinarily be set aside if it is supported by substantial evidence, whether or not the appellate court agrees with the trial court.

■ The witness Jack R. Barnes is a ground water hydrologist and a specialist in his field with considerable experience in the area involved. He had studied most of the reports concerning the area and also had first-hand knowledge of the facts.

Some of his testimony is as follows:

"Q. Getting back to the main question in this case, Mr. Barnes, the flow of the Felix River comes from the Valley Fill, is that right? A. Yes, sir.

\*   \*   \*   \*   \*   \*

"Q. You have heard the testimony of the last three witnesses, regarding the locations where they are to place their wells, and the location of their neighbors who have the nearest wells. From that testimony, if the water is taken out, where they propose to drill their wells, would it affect the neighbors, or their nearest neighbors, any more than it would to take it right out of the same place that they did in 1952, when they had their full irrigation? A. No, sir.

"Q. It wouldn't impair their wells any more, if at all, than their original use of water? A. No, sir, I can't see that it would."

Witness Brown is an Engineer with many years of experience. He testified as follows:

"Q. Is there any difference in the water that is produced by the shallow wells, or wells in the shallow basin, from the Felix water? A. No, and I would like to explain that this way. In a natural state, the shallow ground

water is discharged into the Felix, as described by prior witnesses, because the Felix is cut down below the ground water table. When the first shallow wells were drilled and pumped, the effect of withdrawal of water from the shallow wells was to intercept the ground water that was migrating towards the Felix, so that it reduced the discharge into the Felix, but as the wells were pumped, and the levels of the ground water was lowered, the water level in the wells got down to where they were below the bed of the Felix, and when water is withdrawn under that condition, instead of intercepting water which is going to the Felix, it actually diverts water from the Felix, just as certainly as if it was pumped out of the river, or as if a person had built a dam and taken it off through a canal. Likewise, these appellants, when their wells are put down and water is pumped from them, they will be withdrawing water from the Felix to some extent, the same as these shallow waters in the surrounding area are now doing."

There was also other testimony supporting the finding. Suffice it to say that there was substantial testimony to support finding No. 14.

In this case the appellants did not attack the finding of fact No. 14 in their brief in chief. However, in their reply brief they stated it was an oversight and that they desired to attack it. Whether or not that can be done in that manner is immaterial in this case. We have examined the record and find substantial evidence to support the finding.

As the most recent authority for this, we refer to the recent case of Totah Drilling Co. v. Abraham, 64 N.M. 380, 328 P.2d 1083, 1086, which states as follows:

"This rule has been construed many times and it is now settled that the findings of fact made by the trial court are the findings upon which the case must rest. This court will not search the record in an effort to find facts with which to overturn the findings made by the lower court. Gore v. Cone, 60 N.M. 29, 287 P.2d 229 and cases cited therein; Cross v. Ritch, 61 N.M. 175, 297 P.2d 319, and cases cited therein. In reviewing the evidence on appeal, all disputed facts are resolved in favor of the successful party and all reasonable inferences indulged in to support the judgment. All evidence and inferences to the contrary will be disregarded and the evidence viewed in the aspect most favorable to the judgment. State ex rel. Magee v. Williams, 57 N.M. 588, 261 P.2d 131; Rasmussen v. Martin, 60 N.M. 180, 289 P.2d 327. And if the findings thus found are supported by substantial evidence they will be sustained on

appeal. State ex rel. Magee v. Williams, supra."

■ The next contention of the appellants is that the proposed change of point of diversion amounts to a new appropriation in an underground basin that is fully appropriated. This proposition is based on the assumption that there is no connection between the surface flow of the Rio Felix and the underground water basin. The findings of the lower court do not support this assumption. The lower court found that the headwaters of the Rio Felix sank into the ground and became a part of the Valley Fill and then rose again into the river and that the appropriations made by the appellees amounted to appropriations out of the Valley Fill.

■ In 93 C.J.S. Waters § 170, p. 909, is found the following:

"An appropriation when made follows the water to its original source, whether through surface or subterranean streams or through percolations."

In the case of Richlands Irrigation Company v. Westview Irrigation Company, 96 Utah 403, 80 P.2d 458, 465, the Supreme Court of Utah had the following to say:

"The entire watershed to its uttermost confines, covering thousands of square miles, out to the crest of the divides which separate it from adjacent watersheds, is the generating source from which the water of a river comes or accumulates·in its channel. Rains and snows falling on this entire vast area sink into the soil and find their way by surface or underground flow or percolation through the sloping strata down to the central channel. This entire sheet of water, or water table, constitutes the river and it never ceases to be such in its centripetal motion towards the channel. Any appropriator of water from the central channel is entitled to rely and depend upon all the sources which feed the main stream above his own diversion point, clear back to the farthest limits of the watershed."

In the later case of Little Cottonwood Water Company v. Sandy City, 123 Utah 242, 258 P.2d 440, 443, the Supreme Court of Utah stated:

"Also, no one can interfere with the source of supply of this stream, regardless of how far it may be from the place of use, and whether it flows on the surface or underground, in such a manner as will diminish the quantity or injuriously affect the quality of the water of these established rights."

In Black v. Taylor, 128 Colo. 449, 264 P. 2d 502, 507, the Supreme Court of Colorado quoted from an article published in 13 Rocky Mountain Law Review, at page 1, by A. W. McHendrie, as follows:

" * * * The law in Colorado governing the first classification above suggested, i. e., underground waters which, if not intercepted, will ultimately find their way to a natural stream, is well settled. It has been frequently held by our appellate courts, from a very early date down to the present time, that all underground waters which by flowage, seepage or percolation will eventually, if not intercepted, reach and become a part of some natural stream either on or beneath the surface, are governed and controlled by the terms of the constitution and statutes relative to appropriation, the same as the surface waters of such stream. This rule is so well settled and so well known by all irrigationists, irrigation attorneys, and engineers, that it does not seem necessary to quote from or analyze the many decisions of our courts of last resort in which it is so held."

Applying the foregoing principles to this case would lead to the conclusion that the appellees were entitled to the waters of the Valley Fill that flowed into the Rio Felix at the time of their appropriation. It seems that there is nothing in the law that would prevent them from following this water through an application for a change of point of diversion, provided that it does not impair any other existing rights. In other words, their applications do not amount to a request for a new appropriation in the underground water basin, but merely a request to follow the source of their original appropriation.

We might add that the lower court, in its finding number 5, held as follows:

"(5) The appropriations of water by applicants, from the Felix River, were in effect, appropriated from the Valley Fill."

This finding has not been attacked nor set aside and is binding upon this Court.

The appellants argue that this amounts to a change from a river or surface water right to an underground water right. If the river and the underground waters had two separate sources of supply and if there were no connection between them, this argument might be sound, but under the facts set forth above, the Valley Fill was the source of the flow of the river.

The next contention of the appellants, was that the change of point of diversion would impair existing rights. This was a question of fact which was determined by the lower court against the appellants as previously stated.

The appellants objected that finding of fact No. 14, above, is contrary to the Court's Finding of Fact Number 22, which reads as follows:

"(22) That the shallow waters of the Roswell Basin were closed to further appropriation on August 1, 1937 by Or-

der of the State Engineer, which recited that all of said waters were fully appropriated."

Apparently this is based on the assumption that the appellees are seeking a new appropriation. As pointed out above, they are not seeking a new appropriation but merely seeking a change in the point of diversion. Previously the water flowed from the Valley Fill into the Rio Felix and was then lifted on to the land by means of dams or pumping plants. The appellees now intend to lift the water directly out of the Valley Fill, due to the fact that the water table has been lowered. This does not mean that it is a new appropriation at all, but merely a change in the method of extracting the water from the Valley Fill.

■ The appellants further state that the State Engineer has no right to adjudicate the priority of water rights and that the District Court has no right to do so on an appeal from the decision of the State Engineer. It is true that the State Engineer cannot conduct a proceeding to adjudicate the priorities of water rights. However, each time a permit is granted, the State Engineer has to consider all prior appropriations to determine whether or not there are any unappropriated waters. To that extent, he is required to consider prior appropriations.

Section 75–11–3 of the Statutes of New Mexico, 1953 Compilation, provides for the granting of permits by the State Engineer for the appropriation of underground waters. In part, it provides as follows:

" * * * if he finds that there are in such underground stream, channel, artesian basin, reservoir or lake, *unappropriated waters,* or that the proposed appropriation would not impair existing water rights from such source, grant the said application and issue a permit to the applicant to appropriate all or a part of the waters applied for *subject to the rights of all prior appropriators from said source."* (Italics ours.)

Section 75–11–4 of the New Mexico Statutes, 1953 Compilation provides:

"Existing water rights based upon application to beneficial use are hereby recognized. Nothing herein contained is intended to impair the same or to disturb the priorities thereof."

■ From the foregoing, it is seen that the State Engineer can only grant permits to appropriate waters which are not already appropriated. The appellees had certain rights to appropriated water. When any later permits were granted by the State Engineer they were subject to the rights of all prior appropriators from the same source.

It appears to this Court, that if the lower court exceeded its jurisdiction in making

70

findings concerning priorities, it is immaterial, since the question in this case was whether or not the appellees were entitled to waters of the Valley Fill. In passing on this question, the Court set up the appropriations made by the protestants. It was incidental that the Court made these findings to show that the appellees were entitled to pursue their waters to the ultimate source.

The appellants further object on the grounds that the appellees slept on their rights when they allowed permits to be granted to other parties to pump water from the Valley Fill without making any protest.

The question was raised in one of the points of appellants' brief, that was abandoned. However, in oral argument the matter was mentioned by one of the attorneys for the appellants. Thereafter the Reply Brief was filed indicating that everything was abandoned except point three, mentioned above.

Be that as it may, this Court does not view the acts of the appellees as constituting an abandonment of their water right and we do not believe that they are estopped under all of the facts found by the lower court from asserting the right to their appropriation.

For the foregoing reasons the judgment of the lower court should be affirmed and it is so ordered.

LUJAN, C. J., and COMPTON and SHILLINGLAW, JJ., concur.

SADLER, J., not participating due to illness.