358 P.2d 621

**PUBLIC SERVICE COMPANY of New Mexico, a New Mexico Corporation, Applicant-Appellant,**

v.

**S. E. REYNOLDS, State Engineer, State of New Mexico, et al., Protestants-Appellees.**

In the Matter of Application No. R. G. 304 of the Public Service Company of New Mexico to drill a well and appropriate water to supplement their surface rights.

No. 6675.

Supreme Court of New Mexico.

Dec. 29, 1960.

See, also, 358 P.2d 626.

C. R. McIntosh, Santa Fe, Keleher & Mc-Leod, John B. Tittmann, Albuquerque, for appellant.

Hilton A. Dickson, Jr., Atty. Gen., Charles D. Harris, Special Asst. Atty. Gen., for appellees.

CHAVEZ, Justice.

This case involves an application filed in the office of the State Engineer by Public Service Company of New Mexico for permit to drill a well within the declared boundaries of the Rio Grande Underground Water Basin, to change the point of diversion of a portion of the public water to which rights are claimed by Public Service Company under a prior Declaration No. 01278 and under Permit No. 1677 issued by the State Engineer.

Protests were filed to the application of Public Service Company by certain protestants, claiming that the granting of the permit would impair their existing rights as well owners in the area, and the matter was heard by the State Engineer.

The State Engineer, in a memorandum decision, approved the application, provided that the maximum rate of production of water under the permit shall not exceed 1,000 gpm (gallons per minute); and provided further that the total amount of water appropriated in any year under all of the listed claims of right of Public Service Company, as filed in the State Engineer's Office, shall not exceed 5,040 acre feet. The State Engineer found that the proposed change would not impair existing rights and granted the permit.

The State Engineer ordered that the application cannot be exercised to the detriment of any others having prior, valid and existing rights to the use of said surface and underground sources, and to the detriment of any rights acquired prior to the application. Both protestants and Public Service Company appealed to the district court of Santa Fe County, New Mexico, from the decision of the State Engineer.

The district court denied appellee State Engineer's motion to consolidate the two causes for all purposes, but did order that the two cases be consolidated for the purpose of permitting the filing of one transcript of the proceedings before the State Engineer, as a transcript in each of said causes, and for the further purpose of taking further testimony and trial on the merits, if that stage of proceedings is reached in both cases, and for no other purpose.

The district court rendered judgment affirming the decision of the State Engineer

and denied Public Service Company's appeal from that portion of the decision of the State Engineer which purported to limit the water rights of Public Service Company from all sources to 5,040 acre feet. From said judgment, Public Service Company appeals in Cause No. 6675 to this court.

The district court also rendered judgment affirming the decision of the State Engineer, which found that the diversion proposed in Public Service Company's application will not impair the rights of any of protestants, or any other existing rights to the use of the public waters. Protestants also appealed from the judgment of the district court under cause No. 6703 and this being a separate appeal, will be the subject of a separate opinion in said cause No. 6703.

On this appeal, the parties will be referred to as they appear in the record, Public Service Company as appellant and State Engineer as appellee.

Appellant's water rights were acquired as follows:

(a) Right perfected prior to March 19, 1907, as per Declaration No. 01278 of owner on file ... 1,540 ac. ft.
(b) Under State Engineer's Permit No. 1677 ... 3,500 ac. ft.
Total per annum ... 5,040 ac. ft.

Appellant's application to change the partial point of diversion sets out the reason therefor as follows:

"The above mentioned surface rights in time of drought do not produce sufficient water to meet the present demands, which demands are rapidly increasing each year."

The application also sets forth that the water diverted from the proposed well will be used, along with available surface water, for municipal supply within the area of the city of Santa Fe.

The declarations on file in appellee's office, which are part of the record, by which appellant claims rights to divert the public waters of the state by the pumping of wells are:

| Declaration No | Rate-gpm | Amount a.f./annum | Date of initial beneficial use |
|---|---|---|---|
| RG–1113 | 300 | 483 | 2/10/46 |
| RG–1114 | 50 | 80 | 10/21/50 |
| RG–1115 | 450 | 725 | 2/1/51 |
| RG–1116 | 430 | 693 | 2/21/51 |
| RG–1117 | 650 | 1,048 | 4/23/51 |
| RG–1118 | 1 200 | 1,935 | 12/28/51 |
| | 3,080 | 4,964 | |

Appellant's Exhibit No. 26 shows that the production capacity of these wells has declined to a present total of 3,384,000 gallons per day, or 2,350 gallons per minute. Each of the above listed declarations sets forth that water has been used:

"As and when needed to supplement the Company's main source of supply for City of Santa Fe, located in Santa Fe Canyon, under Permit No. 1677 and Old Water Right declared, * * *."

At no time have any of the above wells been used to supply any part of demands in excess of 5,040 acre feet per year, and the testimony of appellant's witness, Malcolm Heffleman, indicates that it has been the practice of appellant to begin pumping well water for use in the city of Santa Fe when the amount of water in storage in the company's reservoirs on Santa Fe River has dropped to 500,000,000 gallons (1,530 acre feet). Also, according to the demand distribution curve set forth in Figure 34 of the report in evidence entitled, "Geology and Ground Water Resources of the Santa Fe Area," by Zane Spiegel and Brewster Baldwin, the requirement during the seven-month period from April through October would amount to 3,625 acre feet, if the annual demand amounted to 5,040 acre feet. Appellant's existing wells can produce only 2,210 acre feet or 1,415 acre feet less than the April through October demand, during a seven-month period.

Appellee approved appellant's application provided that the maximum rate of production of water under the permit to be issued under said application shall not exceed 1,000 gallons per minute; and provided further that the total amount of water appropriated in any year under appellant's Declaration No. 01278, Permit No. 1677, Declarations Nos. RG–1113, RG–1114, RG–1115, RG–1116, RG–1117, RG–1118, and Permit No. 304 (application involved in this suit), shall not exceed 5,040 acre feet per year.

Appellant's contention is that appellee has no jurisdiction to limit the present rights of appellant to the use of public waters to a total of 5,040 acre feet per annum from all combined sources.

Appellant's application sets out the following pertinent matters:

(a) That appellant is under franchise to the city of Santa Fe to furnish an adequate supply of water for industrial and domestic needs, and to provide for the reasonably to be anticipated city growth and resulting increased needs.

(b) That appellant's water rights were acquired:

| | |
|---|---|
| (1) Under Declaration No. 01278 | 1,540 ac. ft. |
| (2) Under State Engineer's Permit No. 1677 | 3,500 ac. ft. |
| Total per annum | 5,040 ac. ft. |

(c) That the above mentioned rights in time of drought do not produce sufficient water to meet the present demands, which demands are rapidly increasing each year.

(d) That the water diverted from the proposed well will be used, along with available surface water, for municipal supply within the area of the city of Santa Fe.

The record also shows that appellee, under his statutory authority, issued an order declaring the boundaries of the Rio

Grande Underground Water Basin on November 29, 1956.

Appellee found that construction of an additional well is desirable to insure a continuous supply of water to the city of Santa Fe during drought periods.

All of appellant's assignments of error or points of error can be summarized into the contention that appellee exceeded his authority in holding that appellant's claimed water rights to the use of public waters was limited from all sources, i. e., surface and underground, to 5,040 acre feet of water per year, and that appellee had no authority in this proceeding to place any limitation upon the existing underground or well rights of appellant.

Appellant's six declarations of underground water right all state that water was first applied to beneficial use on the following dates: No. RG–1113 on February 10, 1946; No. RG–1114 on October 21, 1950; No. RG–1115 on February 1, 1951; No. RG–1116 on February 21, 1951; No. RG–1117 on April 23, 1951; and No. RG–1118 on December 28, 1951; and further that each well has been used:

"As and when needed to supplement the Company's main source of supply for City of Santa Fe, located in Santa Fe Canyon, under Permit No. 1677 and Old Water Right declared, * * *."

The "Old Water Right declared," referred to above, is Declaration No. 01278.

Five of appellant's wells, to-wit: Nos. RG–1114 to RG–1118 inclusive, were placed in operation during 1950–1951. The demand during this period was only about 3,100 acre feet per year, but the surface water supply was inadequate to meet that demand. The peak annual demand was 4,240 acre feet in 1956 when the May to September precipitation amounted to 4.96 inches or 56.5 per cent of normal. Sixty-one per cent of this demand was met with well water. The demand for the year 1957, in which the May through September precipitation amounted to 8.03 inches or 93 per cent of normal, amounted to 3,140 acre feet. Twenty-seven per cent of this demand was met with well water because of a deficiency of surface water in the early months of the year. At no time have any of said wells been used to supply any part of demands in excess of 5,040 acre feet per year. There is also evidence that the requirement during the seven-month period from April through October would amount to 3,625 acre feet if the annual demand amounted to 5,040 acre feet. Appellant's existing wells can produce only 2,210 acre feet, or 1,415 acre feet less than the April through October demand, during a seven-month period.

Appellant argues that it has water rights to the extent of 5,040 acre feet per year acquired as hereinbefore set out, and that when their application was filed to change

the point of diversion of a portion of their surface water rights to drill the well in question, the only issue presented was whether there was an amount of water set out in the application sufficient to support the application. Appellant also contends that no issue was tendered as to what rights, if any, appellant has in the six above mentioned water wells, and that when appellee limited appellant's application to 5,-040 acre feet per year that appellee, in effect, adjudicated appellant's water rights.

■ Counsel for appellee concedes that appellee does not have the authority to adjudicate water rights in any proceeding. However, he argues that when an application to change a point of diversion is filed, the applicant has the burden of proving the nature and extent of all of its rights in order that appellee can determine that the change of point of diversion will not impair existing water rights.

We cannot agree with appellee's contentions. As to the nature of appellant's claimed water rights, they are a matter of record in appellee's office. As to the extent thereof, and particularly as to appellant's water rights, if any, under the declarations and by virtue of which appellant drilled its six wells, appellant frankly states that it does not know what rights, if any, they have under said six wells and will not know until an adjudication is made by a court of competent jurisdiction.

■ Appellee argues that under Templeton v. Pecos Valley Artesian Conserv. Dist., 65 N.M. 59, 332 P.2d 465, that it is necessary for appellee to consider all prior appropriations to determine whether or not there are any unappropriated waters, and to that extent appellee is required to consider prior appropriations. This is some of the language used in the Templeton case. However, even if appellee's interpretation of Templeton is correct, appellee found that the granting of appellant's application would not impair the rights of protestants, or any other existing rights to the use of the public waters. Appellant concedes that it cannot make a new appropriation by filing an application to change a point of diversion. Appellant argues that no new appropriation is involved in transfers of point of diversion. There is merit in this contention.

■ We have two statutory provisions utilizing procedures to be followed in changing the point of diversion. Section 75–5–23, N.M.S.A., 1953 Comp., provides.

"75–5–23. Change of purpose— Change of point of diversion.—An ap-

propriator of water may, with the approval of the state engineer, use the same for other than the purpose for which it was appropriated, or may change the place of diversion, storage, or use, in the manner and under the conditions prescribed in sections 151–131 and 151–156 as amended herein [75–5–3, 75–5–22], Provided that no such change shall be allowed to the detriment of the rights of others having valid and existing rights to the use of the waters of said stream system."

Section 75–11–7, N.M.S.A., 1953 Comp., provides:

"75–11–7. Change of location of well—Change in use on application —Temporary change—Hearing.—The owner of a water right may change the location of his well or change the use of the water, but only upon application to the state engineer and upon showing that such change or changes will not impair existing rights and to be granted only after such advertisement and hearing as are prescribed in the case of original applications. * * *"

Appellant had the burden of showing that it has claimed water rights to the extent of 5,040 acre feet per year and is asking to take water to the extent of 1,000 gallons per minute (1,615 acre feet) from a new point of diversion. Under appellant's application and under the applicable statutes above set out, there is no requirement on appellant to show that there were unappropriated waters available.

Appellant states in its brief that at no time since the declaration of the Rio Grande Underground Water Basin has it claimed that it could continue to drill wells without need for hearing or investigation by appellee. Appellant also says that it has not attempted in any way to use the application involved in this case for the purpose of making a new appropriation of water. We have so considered these statements.

■ It appears to us that in holding that the total amount of water appropriated in any year under all of appellant's claims of right shall not exceed 5,040 acre feet, that appellee did, in effect, adjudicate, or attempt to adjudicate, appellant's claimed water rights under Declarations Nos. RG–1113 to RG–1118 inclusive. This appellee had no authority to do.

In Application of Brown, 65 N.M. 74, 332 P.2d 475, 477, involving an application for permit to change the location of a well, this court, speaking through Chief Justice. Lujan, said:

"Statutes governing a change in point of diversion or a change in well

location do not grant; rather they restrict the right of an appropriator to change his point of diversion or well location. Martz, Cases on Natural Resources p. 246 (1951). In the absence of statutory procedures to effectuate such changes, the water user may change his point of diversion or well location at will, *subject to the requirement that other water users will not be injured thereby*. Lindsey v. McClure, 10 Cir., 1943, 136 F.2d 65."

We do not pass upon the question of what rights, if any, appellant has under the above mentioned six wells, as that question is not before us and will have to be passed upon in a proper proceeding before a court of competent jurisdiction.

The judgment of the district court, insofar as it affects appellant's water rights, if any, under Declarations Nos. RG–1113 to RG–1118 inclusive, is reversed and remanded to the district court with instructions to enter judgment in conformity with the views herein expressed.

It is so ordered.

COMPTON, C. J., CARMODY, J., and FRED J. FEDERICI, District Judge, concur.

MOISE and NOBLE, JJ., not participating.