508 P.2d 577

STATE of New Mexico, ex rel. S. E. REYN-
OLDS, State Engineer, Plaintiff-
Appellee and Cross-Appellant,

Pecos Valley Artesian Conservancy District,
Plaintiff-Appellee,

v.

L. T. LEWIS et al., James Thigpen et al.,
Defendants-Appellants and
Cross-Appellees.

STATE of New Mexico, ex rel. S. E. REYN-
OLDS, State Engineer, et al.,
Plaintiffs,

v.

HAGERMAN CANAL CO. et al., Defendants.

No. 9201.

Supreme Court of New Mexico.

April 5, 1973.

McAtee, Marchiondo & Berry, E. Douglas Latimer, Albuquerque, for appellants and cross-appellees.

David L. Norvell, Atty. Gen., Paul L. Bloom, Peter Thomas White, Special Asst. Attys. Gen., Santa Fe, for State Engineer.

John F. Russell, Roswell, William M. Siegenthaler, Artesia, for Pecos Valley Artesian Conservancy District.

## OPINION

MONTOYA, Justice.

On April 9, 1956, the State Engineer and Pecos Valley Artesian Conservancy District (Pecos Valley) filed a petition initiating the L. T. Lewis case in Chaves County, New Mexico. Plaintiffs requested that the court require defendants to describe what rights, if any, they had to the use of the waters of the Roswell Underground Water

Basin, and that the court quiet title to defendants' appropriation and use of such water. On October 21, 1958, plaintiffs filed a petition initiating the Hagerman Canal Company case in Chaves County, and requesting the court to enter a declaratory judgment determining the water rights of defendant canal company and its contractual purchasers. In both cases, plaintiffs requested the court to enjoin all illegal uses of underground water. In 1965, the two causes were consolidated. During the period from 1956 to 1965, over 2000 defendants were joined and, through a special master appointed by the court, 1900 sub-file orders were entered adjudicating established individual water rights.

In February 1965, plaintiffs filed a motion requesting the court to set a date for final hearing to approve and confirm the orders adjudicating the water rights of defendants in the Lewis and Hagerman Canal Company cases. In May 1965, certain defendants filed a motion to modify and amend the special master's report and to stay final determination of water rights. In June 1965, plaintiff Pecos Valley filed its response to a previous motion for setting a date for final hearing, said response asking that the confirmation of the special master's adjudication be held in abeyance. Pecos Valley's response also requested that the defendants be allowed to present evidence on the duty of water. The motion to modify and amend was denied on October 28, 1965.

In October 1965, plaintiff State of New Mexico submitted a proposed partial final judgment and decree. Plaintiff Pecos Valley filed objections to the proposed decree. Defendants, Aaron, et al., also filed objections to the proposed final decree and requested that the court find the sub-file orders invalid insofar as they purported to determine the maximum duty of water. Defendants further asked that the court reserve jurisdiction to hear evidence on the duty of water. At the final hearing, the court denied the objections and motions of defendants and Pecos Valley, and entered a partial final judgment and decree confirming and approving the sub-file orders. The partial final judgment and decree confirmed and approved the sub-file orders adjudicating the water rights of the defendants; it required the defendants to install measuring devices to measure diversion from wells; required appointment of a water master by the state engineer; retained jurisdiction to determine water rights of the United States and other defendants who may be made parties, and to enter such supplementary orders as might be necessary for enforcement and modification of the court's decree. Various defendants appealed from that partial final judgment, and some of those appeals have been determined. See State v. Allman, 78 N.M. 1, 427 P.2d 886 (1967); and State v. Crider, 78 N.M. 312, 431 P.2d 45 (1967).

Pursuant to the partial final judgment, in March 1966, the court appointed a watermaster to inspect and approve the installation of water meters, supervise water use, and enforce the adjudicated sub-file orders through contempt proceedings. In 1968, due to the untimely death of the originally designated trial judge, by order of this court another judge was designated to preside over the consolidated cases.

In December 1969, Pecos Valley filed an amended motion requesting the court to modify the partial final judgment and decree in order to establish the duty of water at three-acre feet per annum, measured at the point of beneficial use on the land, rather than at the well, and to be granted carriage loss for transportation of water between the well and the point of delivery upon the land. Plaintiff State of New Mexico filed a response to the amended motion opposing the Pecos Valley motion. Certain defendants filed petitions requesting an increase in the duty of water above the three-acre feet per annum, and requesting a hearing at which evidence could be presented.

In January 1970, the trial court heard legal arguments on Pecos Valley's amended motion and determined that said motion

could not be disposed of on the basis of legal argument, and ordered that the motion be set for trial and that evidence could be submitted on all appropriate issues, including that of the proper duty of water. ·

In May 1970, the court entered its amended decision. The court concluded that it had jurisdiction for the purpose of establishing the proper duty of water. It found that the sub-file orders entered by the special master were not completely consistent as to the establishment of the duty of water, and that the language of the partial final judgment and decree was somewhat ambiguous. The court further found that the evidence was generally consistent with the sub-file orders and also with a duty of water of three-acre feet per annum, and that there should be added a six-inch carriage loss as compensation for loss from the well to the place of delivery upon the land, and further provided that the duty of water and the carriage loss allowance should be measured at the well.

Following the decision, plaintiff State of New Mexico moved to alter or amend the judgment, which motion was denied in July 1970.

It is from the trial court's amended decision that this appeal and cross-appeal arise.

Appellants in this case, Thigpen, Lewis, et al., were defendants in the original proceeding wherein water rights were adjudicated by the sub-file orders, partial final decree and the amended decision. Their principal contention in this appeal is that the establishment of the duty of water at three-acre feet per annum with a six-inch carriage loss is reversible error, because the ruling limiting the duty of water to three-acre feet per annum is a denial of due process by unconstitutionally taking their property without just compensation and due process of law.

Cross-appellant State of New Mexico advances several contentions in seeking reversal of the amended final decision. First, cross-appellant claims the trial court erred by assuming jurisdiction to grant a new appropriation of public water in violation of the constitutional doctrine of separation of powers. Second, it is contended that the partial final judgment and decree was a valid and final judgment adjudicating the duty of water at three-acre feet per annum at the well, and the trial court erred by readjudicating the duty of water. Third, it is argued that the trial court erred in assuming jurisdiction to amend permits and licenses of the State Engineer, duly and lawfully issued subsequent to the entry of the adjudication sub-file orders. Fourth, the contention is made that Pecos Valley did not have standing to pursue the relief sought by its amended motion. Finally, the assertion is made that there was no substantial evidence to support the finding that there should be allotted a six-inch per annum carriage loss from the well to delivery upon the land.

We will first address ourselves to the contentions advanced by cross-appellant State of New Mexico, that the trial court was in error by readjudicating the duty of water, and that the partial final decree entered in March 1966 was a final judgment which could not be modified at a later hearing.

In disposing of those issues we refer to the partial final decree signed by Judge E. T. Hensley which, among other things, concluded that the sub-file orders entered in the cause adjudicating the water rights of the defendants by the special master should be expressly confirmed and approved. The same partial final decree required the installation of measuring devices to measure water from wells in the Roswell Underground Water Basin. Said partial final decree, insofar as pertinent to this appeal, found that:

"The amount of water applied to beneficial use is the basis and measure of the water rights adjudicated in the individual sub-files in these actions."

In a separate conclusion of law, designated as No. 6, the trial court stated:

"The Court should retain jurisdiction of these causes for the purpose of enter-

ing such further orders as shall be necessary in this adjudication suit as it affects the United States, all other defendants and any other persons who may be made parties to these causes. The Court should also retain jurisdiction to enter such supplementary orders for the enforcement and modification of this judgment and decree as may be necessary."

We note that, under our laws, only the courts are given the power and authority to adjudicate water rights. See also Public Service Company v. Reynolds, 68 N.M. 54, 358 P.2d 621 (1960).

The trial court, in its amended decision filed May 18, 1970, held it had jurisdiction for the purpose of establishing the proper duty of water and that the language in the partial final decree was somewhat ambiguous as to the duty of water.

· The record in this case indicates that the sub-file orders were inconsistent in that all of them referred to a maximum duty of three-acre feet of water per annum, but some of them referred to the duty being fixed and measured at the well, and some of them do not refer to any fixing or measurement of the duty at the well. The trial court also referred to the Hope Community Ditch case, being Cause No. 712, Equity, in the United States District Court for the District of New Mexico, which established a "maximum water duty of three-acre feet per annum per acre of land irrigated, delivered upon said land."

It is interesting to note that the form prescribed by the State Engineer entitled "Proof of Application of Water to Beneficial Use" for underground water contained the following language:

"A total of _____ acre feet of water is required to be delivered on the land during the irrigation season from _____ to _____ for the proper irrigation of the lands under this permit."

Other exhibits being certificates and licenses granting the right to appropriate water defined the duty as one not to exceed three-acre feet per annum delivered upon said land. Some of the certificates were dated January 1937, February 1939, November 1940, May 1953 and July 1954, and were issued for various acreages and to different individuals. Other forms printed by the State Engineer's office, which were "Application for Permit to Appropriate the Underground Waters of the State of New Mexico," revised in 1967, include the statement: "Irrigation use shall be stated in acre feet of water per acre per annum to be applied on the land. * * *" All of these forms and certificates apply to the use of underground waters in the Roswell Basin.

Even the State Engineer's Manual of Rules, Regulations, Requirements and Instructions, in effect July 1, 1927, refers to water delivered on the land. A revision of those same rules in April 1951 contains the statement "amount of water applied on the land."

It is evident that there is some inconsistency in defining the duty of water when one landowner has his water duty defined as being measured at the well and others have their duty defined as being delivered upon the land.

In State v. Allman, supra (78 N.M. 3–4, 427 P.2d 888–889), which was an appeal from the partial final decree entered in the instant consolidated cause, in ruling upon the contention of appellant water users that they were denied their day in court because they were not permitted to establish the priority date of their wells at the time when water was first applied to the land, we stated as follows:

"It is appellants' theory that they were denied their day in court because not permitted to establish the priority date of their wells as the time when water was first applied to the land. There can be no doubt that due process requires all who may be bound or affected by a decree are entitled to notice and hearing, so that they may have their day in court. City of Albuquerque v. Reynolds, 71 N. M. 428, 379 P.2d 73 (1963). The appel-

lants should have been given a full opportunity to establish the applicability of the doctrine of relation back in showing a priority date to be that of an original appropriation of water from the same source as that of their wells. Templetion [sic] v. Pecos Valley Artesian Conservancy District, supra [65 N.M. 59, 332 P.2d 465 (1958)]; State ex rel. Reynolds v. Mendenhall, 68 N.M. 467, 362 P.2d 998 (1961).

"* * *.

"Unless it can be said that appellants had an opportunity to present proof and failed to do so, or that the motion showed a lack of any possible merit on its face, there can be no question that hearing and overruling appellants' motions attacking the priority adjudged to the Canal Company does not amount to a complete determination of the issues between the parties so as to satisfy the requirements of due process. City of Albuquerque v. Reynolds, supra; State ex rel. Reynolds v. W. S. Ranch Company, 69 N.M. 169, 364 P.2d 1036 (1961).

"* * *.

"* * *. It would seem self-evident that if relative priorities 'one toward the other' were open for determination before the final decree was entered, it would necessarily follow that the determination of the various rights would be made by application of identical standards and rules. That a different result might be encountered in separate lawsuits is conceivable. However, where all rights are being adjudicated in one lawsuit, as here, after consolidation, the application of different standards in determining the relative priorities is patently unfair and improper. We do not see how on the face of appellants' motions it could be determined that they were without merit. This being true, as already observed, they should have been permitted to present such proof as was pertinent to establish the relative priorities of their claims as related to those of the Canal Company. The refusal to permit them to do so was reversible error."

We, therefore, hold that the partial final decree was not a complete adjudication of all the rights of the parties involved, particularly since the record herein indicates that the parties were denied the opportunity to present evidence as to the proper measure of the duty of water in the Basin. It follows that the same applies to the carriage losses before the water is delivered upon the land.

In considering the question of ambiguity and the action of the trial court in entering its amended decision, the correctness of which is now before us, we turn to our former decisions to determine what action is proper under those circumstances. The trial court here found that the partial final decree was "somewhat ambiguous as to the duty of water."

In Hollingsworth v. Hicks, 57 N.M. 336, 346–347, 258 P.2d 724, 731–732 (1953), the same question arose and we held:

"It is the general rule that where the language of a judgment or decree is clear and unambiguous, neither the pleadings nor the findings or verdict, nor matters dehors the record *may be resorted to* to change the meaning. It must stand and be enforced as it speaks. But when the meaning is obscure, doubtful, or ambiguous, the judgment, pleadings and entire record may always be resorted to for the purpose of aiding in the construction thereof. See Bond v. Markstrum, 102 Mich. 11, 60 N.W. 282; Kelliher v. Stone & Webster, 5 Cir., 75 F.2d 331, 333; Reaves v. Turner, 20 Okl. 492, 94 P. 543; Houston Oil Co. of Texas v. Village Mills Co., Tex.Com.App., 241 S.W. 122.

"The function of the process of construction is to determine the intention and meaning of the author of a judgment or other instrument. The record of a former trial may be consulted to determine what was actually passed upon, Bond v. Markstrum, supra; Kelliher v. Stone & Webster, supra; 1 Black on Judgments, Section 123, page 179. The rule is stated in Freeman on Judgments,

Volume 1, 4th Ed., Section 45, pages 51 and 52, as follows:

"'* * * If the entry of a judgment is so obscure as not to express the final determination with sufficient accuracy, reference may be had to the pleadings and to the entire record * * *. In case of doubt regarding the signification of a judgment, or any part thereof, the whole record may be examined for the purpose of removing the doubt * * *.'" (Emphasis added.)

The trial judge who entered the partial final judgment apparently felt that additional evidence would be necessary to determine what the future use of the duty of water would be. In a letter written prior to his untimely death, and addressed to one of the attorneys for some of the defendants herein, he wrote as follows:

"Sometime ago we discussed by telephone the matter of requiring the metering of wells in the Roswell Basin. I can readily understand why the metering procedure might be considered by some as a mere convenience in policing the extent of use of water. This was not my primary reason for the use of meters. Rather, it was believed that this was the only logical way to arrive at what the annual duty of water should be. In other words, if after the water had been metered and a study made of the water levels in the basin, then there can be a factual determination of what the future duty of water should be, that is, whether it should be three acre feet per annum, or more, or less."

█ Ordinarily, it would not be proper to resort to such evidence in determining the issue of finality of judgments, or their ambiguities. However, in the interest of justice, and in view of the fact that the trial judge who entered the partial decree retained "jurisdiction over the entire case to enter such supplementary orders for the enforcement and modification of this judgment as may be necessary," we must, of necessity, refer to all of the proceedings in order to determine the rights of the parties in this case. We, accordingly, hold that the trial court correctly determined that the partial final decree was somewhat ambiguous as to the duty of water, and that he correctly proceeded to receive evidence in connection therewith, the parties having been previously denied the opportunity to do so. The letter quoted above indicates the reasoning and intent of the language used by the trial court in its partial judgment, as well as the ambiguity of said decree. We do not agree that the determination of ambiguity by the trial court was so vague as to require a remand, or to prevent an adequate review of this issue on appeal. The record of the proceedings in the instant case is sufficient to enable us to resolve that issue, as indeed we have. The questions raised as to the finality of the partial judgment and decree involved herein, we believe, have been answered by all of the foregoing.

██ We next pass upon the question of whether there is substantial evidence to support the trial court's finding that there should be added to the duty of water an amount of water, measured at the well, to compensate the carriage loss from the well to the point of delivery upon the land. We have examined the record in detail and, while the evidence reflects a wide divergence as to the percentage of loss covering the carriage losses within the Basin, it was the duty of the trial court to resolve conflicts in the evidence and we hold that there is substantial evidence to support the trial court's determination in this regard. We are, of course, aware of the provisions of § 75–13–25, N.M.S.A., 1953 Comp. (1971 Pocket Supp.), but since that statute was passed in 1971, subsequent to the entry of the amended decision in question herein, we do not deem it necessary to consider the effect of any of its provisions. To do so, would be improper.

We next consider the contention raised by appellants that the trial judge's finding of fact, that the duty of water should properly be set at three-acre feet, is *not*

supported by substantial evidence, and that the judge's conclusion of law based thereon is erroneous and requires reversal.

Many witnesses presented considerable testimony concerning irrigation practices and experience, and there was presented expert opinion on what the annual duty of water should be for the irrigated lands in the Roswell Artesian Basin. Some of the property owners testified they needed in excess of three-acre feet. Other witnesses testified that the need was just a fraction under three-acre feet. Considerable testimony was elicited, some based on a water consumption formula, other evidence was submitted by the State Engineer's staff, the superintendent of the New Mexico State University Experimental Farm, and from an independent study conducted by a farm management specialist with the Texas Agricultural Extension Service, who conducted his research on water usage in the Roswell Basin during the period 1966 to 1968. There was no agreement as to the exact amount of water required to economically farm in the Roswell Basin, nor as to the exact amount that had been used prior to the installation of meters. The amount of water used and necessary varied considerably, to say the least.

The basic rules enunciated by us, as to the process use to determine whether or not there is substantial evidence to support the findings made in this regard by the trial court, are clearly and concisely stated in Tapia v. Panhandle Steel Erectors Company, 78 N.M. 86, 89, 428 P.2d 625, 628 (1967), as follows:

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Wilson v. Employment Sec. Comm'n, 74 N.M. 3, 389 P.2d 855, and has been defined as evidence of substance which establishes facts from which reasonable inferences may be drawn. Brown v. Cobb, 53 N.M. 169, 204 P.2d 264. On appeal, all disputed facts are resolved in favor of the successful party, all reasonable inferences indulged in support of the verdict, all evidence and inferences to the contrary disregarded, and the evidence viewed in the aspect most favorable to the verdict. Totah Drilling Co. v. Abraham, 64 N.M. 380, 328 P.2d 1083; State ex rel. Magee v. Williams, 57 N.M. 588, 261 P.2d 131; Sessing v. Yates Drilling Co., 74 N.M. 550, 395 P.2d 824; Witt v. Marcum Drilling Co., 73 N.M. 466, 389 P.2d 403; Blancett v. Homestake-Sapin Partners, 73 N.M. 47, 385 P.2d 568. Nor does the fact that there may have been contrary evidence which would have supported a different verdict permit us to weigh the evidence. Renehan v. Lobato, 55 N.M. 532, 237 P.2d 100; State ex rel. Reynolds v. Lewis, 74 N.M. 442, 394 P.2d 593. Viewing the evidence in that aspect, it meets the substantial evidence test."

Again, in the Tapia case, supra (78 N.M. 86, 89, 428 P.2d 625, 628), we stated the following:

"* * *. It has been firmly established in this jurisdiction that only the trier of the facts may weigh the testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of a witness, and say where the truth lies. Romero v. H. A. Lott, Inc., 70 N.M. 40, 369 P.2d 777; Montano v. Montoya-Saavedra, 70 N.M. 332, 373 P.2d 824; Sauter v. St. Michael's College, 70 N.M. 380, 374 P.2d 134."

Judged by the foregoing standards, we hold that the findings of the trial court are supported by substantial evidence. See also Tome Land & Improvement Co. v. Silva, 83 N.M. 549, 494 P.2d 962 (1972); McCauley v. Ray, 80 N.M. 171, 453 P.2d 192 (1968).

Another contention raised is that the ruling of the trial court limiting the duty of water is reversible and prejudicial error because it constitutes a denial of due process by taking the property of the parties without compensation and without due process of law. In a discussion of this is-

774

sue, appellants also contend that the trial court erroneously concluded that it was in some manner bound by the history of statutory application and judicial as well as administrative decision regarding the three-acre feet duty of water. We do not believe there is a denial of due process or the taking of property without just compensation. The trial judge considered all of the matters in the record before him including the conflicting evidence as to the annual duty of water and as to the amount of carriage losses. The disposition of those issues on appeal is controlled by the precedents which we have already discussed; i. e., substantial evidence supports the decision of the trial court and that, on appeal, we do not weigh the evidence to resolve the conflicts in the testimony, that being a duty of the trial court. See Tapia v. Panhandle Steel Erectors Company, supra. The parties were afforded an opportunity to present evidence on those issues, and the size of the record in this proceeding, 1738 pages of testimony and voluminous exhibits, would indicate an exhaustive presentation of evidence directed to all the issues involved.

Lastly, cross-appellants argue that the trial court erred in holding that appellee Pecos Valley had standing to pursue the relief sought by its amended motion. Pecos Valley was organized pursuant to statutory authority. Sections 75–13-1 to 75–13-24, N.M.S.A., 1953 Comp. The purpose of its organization, as expressed in the statutes, is to conserve the water in artesian basins, and the conservancy districts are given the power "to sue and to be sued, * * * and to do and perform * * * all other acts necessary and proper for carrying out to all intents and purposes the objects for which the district was created, * * *." Pecos Valley is the owner of water rights and it is incumbent upon it to assert any position it feels affects those rights. We have considered the authority and power of Pecos Valley to maintain a suit and hold that it may sue and defend for its water users in a representative capacity where such water

users have a common or general interest in the subject matter of the suit, and hold that it was a proper party to maintain the suit. Pecos Valley Artesian Conservancy Dist. v. Peters, 50 N.M. 165, 173 P.2d 490 (1945). It goes without saying that when a vested water right of the owners of the district is in question, be it definition, modification or adjudication of such rights, the district certainly has, not only standing, but a duty to participate in litigation affecting those rights.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

It is so ordered.

STEPHENSON and MARTINEZ, JJ., concur.