332 P.2d 475

**APPLICATION OF M. T. BROWN and C. V. Hoke, Protested by Chester E. Barnett, File P–795.**

**Chester E. BARNETT, Appellee,**

**v.**

**M. T. BROWN and C. V. Hoke, Appellants, S. E. Reynolds, State Engineer of the State of New Mexico, Appellant.**

**No. 6435.**

Supreme Court of New Mexico.

Sept. 30, 1958.

On Motion for Rehearing Nov. 24, 1958.

Fred M. Standley, Atty. Gen., Charles D. Harris, J. Lee Cathey, Special Ass't Attys. Gen., for Reynolds.

Hartley, Buzzard & Patton, Clovis, for Brown and Hoke.

Jay T. Morgan, Portales, Smith & Smith, Clovis, Fred C. Tharp, Clovis, for appellee.

LUJAN, Chief Justice.

This case involves an appeal from an order of the State Engineer granting a permit to change the location of a well after such change had already been accomplished.

The case has previously come before us on a procedural point. Application of Brown, 61 N.M. 471, 302 P.2d 735. At the time the opinion was filed in the former appeal, a motion for summary judgment was pending in the trial court. Appellee sought a judgment dissolving and rescinding the permit for a change in well location issued to appellants Brown and Hoke by the State Engineer, also an appellant in this case. The trial court granted appellee's motion for summary judgment and a judgment was entered enjoining appel-

lants from utilizing the well in question. The case is here on appeal from that judgment.

Inasmuch as the matters decided by the trial court on the motion for summary judgment were issues of law, there is no dispute as to the facts. A chronological summary of the pertinent facts is set forth below.

(1) June 6, 1955. Appellants Brown and Hoke, who had a legal right to appropriate water from a well in the Portales Underground Water Basin, changed the location of the well.

(2) June 8, 1955. The drilling of the new well was completed.

(3) June 10, 1955. Appellants Brown and Hoke filed an application with the State Engineer requesting a permit to change the location of the well which, in fact, had already been changed.

(4) June 12, 1955. Appellants began using water from the new well for beneficial purposes.

(5) June 13, 1955. The State Engineer granted appellants Brown and Hoke what can only be called an "emergency permit" for the change in well location, subject to withdrawal if a protest was filed against the formal application.

(6) July 1, 1955. Appellee, an adjoining appropriator from the Portales Underground Water Basin, filed a protest to the change in well location, and appellant State Engineer subsequently restrained the use of the well.

(7) August 10, 1955. A hearing was held by the State Engineer to determine the propriety of issuing the permit to change the location of the well.

(8) August 12, 1955. The permit to change the location of the well was granted.

(9) An appeal was taken by appellee to the District Court for Roosevelt County and on January 21, 1958, the trial court entered judgment in appellee's favor.

The statutory provisions governing the change in a well location are contained in Section 75–11–7, NMSA, 1953. This section provides in part as follows:

"The owner of a water right may change the location of his well or change the use of the water, but only upon application to the state engineer and upon showing that such change or changes will not impair existing rights and to be granted only after such advertisement and hearing as are prescribed in the case of original applications."

Appellants Brown and Hoke, as well as appellant State Engineer, contend that there was complete compliance with the above quoted statute inasmuch as the required statutory procedure for a change in well location was followed *after* the change in location had already been made.

We find no merit whatever in this contention. It is quite patent that the provisions of Section 75–11–7, supra, contemplate application, notice, hearing and approval *prior* to a change in well location. The language can bear no other interpretation.

The State Engineer urges that the intent of the legislature in enacting Section 75–11–7, supra, was only to prohibit the *use* of water from a well in a changed location prior to application, notice, hearing and approval. We feel that to accept such a strained construction of the clear statutory language would, frankly speaking, amount to judicial legislation. It is the actual drilling of the new well which requires application and approval.

█ Certainly the State Engineer needs a reasonable degree of flexibility and opportunity for the exercise of sound discretion in the performance of his duties. But his authority is no more than the legislature has granted, either expressly or by necessary implication. See Hutchins, Ground Water Legislation, 30 Rocky Mountains L.Rev. 416, 429 (1958). It is uncontroverted that the State Engineer has no express authority to issue a so-called emergency permit for a change in well location. Nor can we find authority for any such procedure by implication. Rather the statutory language, as well as certain language contained in the Manual of Rules and Regulations Governing the Drilling of Wells and the Appropriation and Use of Underground Waters in Declared Basins of the State of New Mexico precludes this implied authority. Rule V of this Manual provides in part as follows:

"Change in location of well * * * may be made * * * upon proper application to the State Engineer and with his approval. * * *"

"A. *Change in Location of Well.* An application for permit to change location of well shall be accompanied by the proper filing fee. The forms shall be filled out in sufficient detail to describe completely the proposed change, the reasons therefor * * *."

The import of this regulation is that in order to properly initiate a change in location an application for such change must be filed with the State Engineer. A similar position was expressed by the present attorney for the State Engineer in an article entitled New Mexico's Rule in the Development of the Law of Underground Water, 31 Dicta 41 (1954). The following statement appears at page 42 of this article:

"Under the law as it has been administered all appropriations, changes of water rights, changes of methods of use and *changes in location or construction of the well are allowed only after application to and permit from the State Engineer.*" (Emphasis added.)

As we have seen, appellants Brown and Hoke had drilled the well at the new location before making an application for such change to the State Engineer.

It may be that the State Engineer should have the authority to issue emergency permits for changes in well locations. But in view of Section 75–11–7, supra, such authority does not exist under the general rule-making power delegated to him in Sections 75–11–11 and 75–11–17, NMSA, 1953. It is up to the legislature to grant such authority if it deems it necessary or desirable.

 The next question presented is whether an unlawful and unauthorized change in well location can subsequently be validated by a properly advertised hearing after which the State Engineer finds that the rights of other appropriators will not be impaired by the change. We believe an unauthorized change in location can be so validated.

Statutes governing a change in point of diversion or a change in well location do not grant; rather they restrict the right of an appropriator to change his point of diversion or well location. Martz, Cases on Natural Resources p. 246 (1951). In the absence of statutory procedures to effectuate such changes, the water user may change his point of diversion or well location at will, *subject to the requirement that other water users will not be injured thereby.* Lindsey v. McClure, 10 Cir., 1943, 136 F.2d 65.

Clearly then, the principle underlying the statutory requirement of application, notice, and hearing prior to a change in well location is to insure that such change will not impair the rights of other appropriators. When, as here, an appropriator has unlawfully changed his well location without following the statutory procedure, a subsequent determination by the State Engineer, after notice and hearing, that the rights of other water users will not be impaired, cures the original defect in procedure.

 It is true, as appellee points out, that ordinarily a person is not allowed to profit from his own wrongful act. But in a case such as this, we believe this principle must give way to the universally recognized doctrine that the law will not require a useless act. To order the well in question plugged for failure to follow the procedure set forth in Section 75–11–7, NMSA, 1953, would be to require such a useless act. Appellants Brown and Hoke would then simply file an application for a change to the present location with the State Engineer. Notice would be published and a hearing held, and presumably the State Engineer would again find that the change would not impair existing rights and would approve the proposed change.

■ While we do not feel this holding will encourage evasion or violation of Section 75–11–7, supra, it is in no way to be construed as condoning the practice of drilling a well at a new location without first obtaining a permit to do so from the State Engineer. The entire risk of subsequent approval, both monetary and otherwise, is upon the appropriator who changes his well location prior to application, publication and a hearing to determine whether existing rights will be impaired. Further, *whether or not* such change in location is subsequently approved by the State Engineer, the appropriator who made such change is guilty of a misdemeanor and is liable for prosecution under § 75–11–12, NMSA, 1953. After-the-fact approval by the State Engineer does not have the effect of nullifying the provisions of § 75–11–12, supra.

Appellee also contends that the "Decision of the State Engineer discloses that the existing rights of Protestant were impaired by the change of location of well of applicants", and that this court "should affirm the judgment of the lower court on this ground, if not upon the grounds upon which the summary judgment was actually granted." We will assume for purposes of this appeal that this contention presents a question of law rather than of fact.

■ We are unable to agree with appellee's contention regarding the decision of the State Engineer. Admittedly the findings of fact made by the State Engineer are somewhat confusing. Nonetheless, Finding No. 11 reads as follows:

"That the decline in Protestant's water table is not of a sufficient magnitude that will impair Protestant's water right and warrant the denial of the application."

In view of our holding, the question of whether the trial court properly granted the injunction against the use of the well at the changed location is moot.

The judgment is reversed and the cause remanded with directions to dissolve the injunction and to take any further proceedings deemed necessary.

It is so ordered.

SADLER, McGHEE, COMPTON and SHILLINGLAW, JJ., concur.

On Motion for Rehearing

LUJAN, Chief Justice.

■ Counsel for plaintiffs (appellees) have moved for rehearing. He urges that the State Engineer lacked jurisdiction to approve the change in well location here involved. This contention was refuted in our opinion where we held that an unauthorized change in location prior to hearing does not oust the State Engineer of jurisdiction to approve such change after notice and hearing if he finds that existing

rights will not be impaired thereby. It necessarily follows then that the State Engineer did have jurisdiction to grant the permit in question.

Appellee further contends that the findings and order of the State Engineer disclose that the existing rights of appellee were, and are, impaired inasmuch as the findings reflect that the change in location produced a drawdown of 3.9 feet in the water table at appellee's well. As noted in our opinion, we do not feel that the findings of the State Engineer in and of themselves reveal an impairment.

Appellee has apparently misconstrued what he calls the "Rule" as to impairment. The lowering of a water table in any particular amount does not necessarily constitute an impairment of water rights of adjoining appropriators. The amount that the water table is lowered is an important factor, but in addition all characteristics of the particular acquifer must be considered along with well locations. Hence we find nothing in the Hobson decision (Application of Hobson), 64 N.M. 642, 330 P.2d 547, that is inconsistent with our holding in this case.

Aside from any question as to whether the findings and order of the State Engineer disclose an impairment on their face, appellee urges that an impairment did in fact occur. This argument is premature in this Court inasmuch as the trial court has not yet determined whether the findings

and order of the State Engineer were arbitrary, capricious, unreasonable or not supported by substantial evidence. This is the further proceeding which we had in mind when we remanded this cause to the district court.

The motion will be denied.

It is so ordered.

McGHEE, COMPTON and SHILLINGLAW, JJ., concur.

SADLER, J., not participating on account of illness.