345 P.2d 744

**STATE of New Mexico ex rel. S. E. REYNOLDS, State Engineer, and Pecos Valley Artesian Conservancy District, Plaintiffs-Appellants,**

v.

**Joe MITCHELL and J. T. Mitchell, Defendants-Appellees.**

No. 6524.

Supreme Court of New Mexico.

Sept. 18, 1959.

Rehearing Denied Nov. 13, 1959.

Frank B. Zinn, Atty. Gen., Charles D. Harris and J. Lee Cathey, Sp. Asst. Attys. Gen., John F. Russell, Roswell, for appellants.

H. C. Buchly, James M. H. Cullender, Roswell, for appellees.

LUJAN, Chief Justice.

The State Engineer, appellant here, filed a petition seeking an adjudication of all underground water rights in the Roswell Artesian Basin. Appellant's request that a special master be appointed to hear the case was granted.

Joe and J. T. Mitchell, appellees, filed a separate answer in which they claimed certain water rights in portions of Sections 14 and 15, Township 14 South, Range 25 East, NMPM, Chaves County, New Mexico.

A hearing was held to determine what water rights, if any, the appellees have in these Sections. The special master subsequently filed his report and recommendations and these were approved by order of the court. It was determined that appellees have a valid underground water right appurtenant to 76.7 acres in the S½ SE¼ of Section 15 and that they have no valid underground water right appurtenant to Section 14.

Upon motion of appellees, the order approving the special master's report was set aside so that appellees might submit additional evidence. After hearing such additional evidence the special master found that in addition to the 76.7 acre water right in Section 15, appellees also have a valid shallow underground water right to irrigate 40 acres in the SW¼ of Section 14.

This appeal involves only the 40 acre water right in Section 14. Appellant concedes that appellees have a valid 76.7 acre water right appurtenant to Section 15.

In 1935, H. E. Blackwelder, appellees' predecessor in title to the lands in Section 15, filed an application to appropriate water from a shallow ground water source specifying in the application that the water was to be used to irrigate the 80 acres in the S½ SE¼ of Section 15. This application was approved and the well was designated RA–1259. At various times thereafter, applications were filed seeking authoriza-

tion to repair this well or change its location. Such applications and approvals hereof indicate that the well was to be used only to irrigate the 80 acres comprising the S½ SE¼ of Section 15.

The first application concerning the lands in Section 14 was filed in 1937 by Henry G. Perry, appellees' predecessor in title. The application sought an appropriation for the entire SW¼ of Section 14 and was denied on the ground that it would impair existing rights.

The trial court's findings of fact are supported by substantial evidence insofar as they state that commencing in 1927, 40 acres of land located in the southwest corner of the SW¼ of Section 14 were irrigated from a well located on this acreage and that the well was subsequently abandoned and the tract irrigated from a well located on Section 15. The court's finding that there was no consecutive period in excess of three years during which water was not applied to beneficial use on the 40 acre tract in Section 14 is also supported by substantial evidence.

A witness was produced who had seen the tract in question irrigated in 1927. This witness further testified that the casing collapsed in the original well and the tract was subsequently irrigated from the "Blackwelder well" in Section 15.

Another witness testified that he helped irrigate and farm this tract in 1930. Other witnesses testified that they had seen this tract farmed and irrigated from the "Blackwelder well" in various years during the 1930's. The evidence presented is sufficient to establish that the tract did not lie idle for any consecutive four-year period.

Thus the trial court's determination that there was a valid and existing right to irrigate the 40 acre tract prior to enactment of the comprehensive underground Water Code in 1931 (Chapter 131, Laws of 1931), and prior to the date the State Engineer declared the Roswell Artesian Basin, is supported by substantial evidence. But this determination does not resolve the case.

The crucial question in this case is whether the change in well location from Section 14 to Section 15 was accomplished prior to August 21, 1931, the date the Roswell Artesian Basin was declared. And on this question the trial court made no finding. The court simply determined that the well in Section 14 was abandoned sometime after 1927 and the tract in question was thereafter irrigated from a well located in Section 15.

After the 1931 Underground Water Code went into effect, a change in well location *in a declared Basin* could be legally accomplished "only * * * upon showing that such change or changes will not impair existing rights and to be granted only after such advertisement and hearing as are prescribed in the case of original ap-

plications." Section 75–11–7, NMSA 1953 Compilation. See Section 75–11–1 et seq., NMSA 1953 Compilation.

To hold that a person having a vested underground water right prior to the declaration of a basin could, with impunity, forever after change his well location at will without regard to whether the change would impair the existing rights of other appropriators would be eminently unreasonable. See Application of Brown, 65 N.M. 74, 332 P.2d 475, and cases cited therein.

■ The reasonable limitations on well location changes imposed by Section 75–11–7, supra, do not have the effect of confiscating vested rights. The owner of a vested right could, and can, continue to exercise his existing right based upon his previous application of water to beneficial use. What he could not, and cannot, do is change the location of a well used to irrigate a tract with a vested right without following the statutory procedure. Application of Brown, supra; Spencer v. Bliss, 60 N.M. 16, 287 P.2d 221.

■ An unauthorized change in well location is a misdemeanor, and if the owner of the 40-acre *vested water right in Section 14 changed the location of his well after August 21, 1931, without following the statutory procedure, and thereafter irrigated from the new well for four consecutive years, it resulted in a legal forfeiture of his water right. Irrigating from an unauthorized well must, insofar as forfeiture is concerned, be considered tantamount to not irrigating at all. As we stated in State ex rel. Bliss v. Dority, 55 N.M. 12, 19, 225 P.2d 1007, 1011:

> "No right to the use of water from such sources was obtained by its use by defendants in violation of law, nor can it be."

According to the testimony of witness Fred R. Allen, an engineer employed by the State Engineer's office, the 40-acre tract in question is presently being irrigated from *two* wells in Section 15, one of which is presumably RA–1259.

Well RA–1259 was not drilled at the time Blackwelder filed his original application in 1935. In the space provided for the name of the well driller, the applicant stated "contract not let." Obviously then the change to RA–1259 took place after 1931 and the statutory procedure for a change in well location was not followed. Consequently the appellees have no authority to irrigate the 40-acre tract in Section 14 from RA–1259.

■ The State Engineer has no RA file for another well located in the SW¼ NW¼ of the SE¼ of Section 15 which, according to witness Allen, is also being used to irrigate the 40-acre tract. The fact to be determined is whether the 40-acre tract was being irrigated from the

well just mentioned prior to August 21, 1931, and if so, whether there has been any consecutive four-year period when the tract was not irrigated *from this particular well,* and from no other source. With this determination the case can be resolved.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

It is so ordered.

McGHEE, COMPTON, CARMODY, and MOISE, JJ., concur.