361 P.2d 721

STATE of New Mexico ex rel. S. E. REYNOLDS, State Engineer, and Pecos Valley Artesian Conservancy District, Plaintiffs-Appellees,

v.

Donald E. FANNING, Defendant-Appellant.

No. 6773.

Supreme Court of New Mexico.

May 9, 1961.

Neil B. Watson, Fred A. Watson, Artesia, for appellant.

Hilton A. Dickson, Jr., Atty. Gen., Charles D. Harris and J. Lee Cathey, Sp. Asst. Attys. Gen., John F. Russell, Roswell, for appellees.

CHAVEZ, Justice.

Appellees, plaintiffs below, filed a petition for an adjudication of all rights to use of the underground waters of the entire Roswell Artesian Basin and for injunction against all illegal use of said waters. A special master was appointed to hear the evidence, make findings of fact and conclusions of law, and recommendations to the court.

Appellant's answer sets out that the parties had agreed as to the extent of appellant's water rights, except that appellant claims water rights from the shallow ground water sources for the irrigation of 88.7 acres out of the S½SE¼ and E½SE¼ SW¼, Sec. 13, T. 18 S., R. 26 E., N.M. P.M., which rights appellees refuse to rec-

ognize. The lands in question are immediately south of the Penasco River in said Sec. 13.

The special master found that the lands involved were located within the Roswell Artesian Basin, an artesian basin or reservoir which was declared as such by the state engineer in August 1931, and thereupon closed to further appropriation. The special master further found that the Dallas Hydrographic Survey was conducted by the office of the state engineer in 1936, which showed lands under irrigation and cultivation at the time of the survey. This survey also showed those lands which were not under irrigation at the time but which had been under irrigation for a period of four years prior thereto; those lands which had been under irrigation but which had remained unirrigated and fallow for a period of more than four years prior to such survey; and those lands which had never been under irrigation. This survey classified the lands in dispute as dry grass lands.

The special master also found that in 1940 the Pecos River Joint Investigation Hydrographic Survey was conducted by the United States and cooperated in by the state engineer, and that an interpretation of the aerial photographs classified the lands involved herein as being dry grass lands.

The special master further found that the 88.7 acres involved has been irrigated prior to 1931 by means of a hand dug well

located on or near the extreme west boundary of the 88.7 acres, and subsequently irrigated from said well, and that alfalfa and pasture grass were harvested therefrom.

The special master also found that prior to 1943 appellant's predecessors in title abandoned the use of the shallow well which irrigated said 88.7 acres and in such year drilled a well in the SW¼SW¼ of Sec. 13 without obtaining a permit from the state engineer.

The special master concluded that there are valid water rights appurtenant to 88.7 acres in the S½SE¼ and the E½SE¼SW¼, Sec. 13, south of the Penasco River.

The special master's report was approved by the district court on May 12, 1959. On May 20, 1959, appellees filed objections to the report of the special master, excepting to findings of fact numbered 12, 13, 14 and 16, and to the special master's conclusions of law numbered 1, 2 and 3, alleging that there was no substantial evidence to support them.

On February 2, 1960, the district court entered an order finding:

"* * * that the Special Master's Findings of Fact Numbers 12, 13 and 16 are not supported by substantial evidence and the Special Master's Conclusion of Law Number 1 is not a correct statement, in that the Court does not find that the defendant has a valid right to appropriate water in regards to the 88.7 acres of land, it being the opinion of this Court that the appropriation was made without authority of law and that there is no valid water right."

The district court also ordered that the report of the special master be disapproved and appellant enjoined from irrigating the acreage described in the special master's report.

From this order, appellant takes this appeal.

Although appellant urges two other points of claimed error, we need not discuss them because our disposition of the case under appellant's point III is determinative of the entire controversy.

The special master made the following conclusions of law:

"2. That the shallow well located in the SW¼SW¼ of Section 13, and used by the defendants to irrigate the lands in question is an illegal well.

"3. That no forfeiture of rights appurtenant to said lands resulted from the unlawful Change of Point of Diversion referred to in Conclusion of Law No. 2."

This court in State ex rel. Reynolds v. Mitchell, 66 N.M. 212, 345 P.2d 744, 745, stated:

"The crucial question in this case is whether the change in well location from Section 14 to Section 15 was accomplished prior to August 21, 1931, the date the Roswell Artesian Basin was declared. And on this question the trial court made no finding. The court simply determined that the well in Section 14 was abandoned sometime after 1927 and the tract in question was thereafter irrigated from a well located in Section 15.

"After the 1931 Underground Water Code went into effect, a change in well location *in a declared Basin* could be legally accomplished 'only * * * upon showing that such change or changes will not impair existing rights and to be granted only after such advertisement and hearing as are prescribed in the case of original applications.' Section 75–11–7, NMSA 1953 Compilation. See Section 75–11–1 et seq., NMSA 1953 Compilation.

"To hold that a person having a vested underground water right prior to the declaration of a basin could, with impunity, forever after change his well location at will without regard to whether the change would impair the existing rights of other appropriators would be eminently unreasonable. See Application of Brown, 65 N.M. 74, 332 P.2d 475, and cases cited therein.

"[1] The reasonable limitations on well location changes imposed by Section 75–11–7, supra, do not have the effect of confiscating vested rights. The owner of a vested right could, and can, continue to exercise his existing right based upon his previous application of water to beneficial use. What he could not, and cannot, do is change the location of a well used to irrigate a tract with a vested right without following the statutory procedure. Application of Brown, supra; Spencer v. Bliss, 60 N.M. 16, 287 P.2d 221.

"[2] An unauthorized change in well location is a misdemeanor, and if the owner of the 40-acre vested water right in Section 14 changed the location of his well after August 21, 1931, without following the statutory procedure, and thereafter irrigated from the new well for four consecutive years, it resulted in a legal forfeiture of his water right. Irrigating from an unauthorized well must, insofar as forfeiture is concerned, be considered tantamount to not irrigating at all. As we stated in State ex rel. Bliss v. Dority, 55 N.M. 12, 19, 225 P.2d 1007, 1011:

" 'No right to the use of water from such sources was obtained by its use by defendants in violation of law, nor can it be.' "

■ It is obvious that the special master's conclusion of law number 3, hereinbefore quoted, is in direct conflict with our holding in State ex rel. Reynolds v. Mitchell, supra, which case, in fairness to the special master, was decided after he had submitted his findings of fact and conclusions of law. In any event, even if we were to accept appellant's evidence in the most favorable light, the record is clear that appellant's predecessors in title, prior to 1943, abandoned the use of the shallow well which irrigated the land involved herein, and in such year drilled a new well in the SW¼ SW¼ of Sec. 13 to appropriate underground shallow waters without obtaining a permit from the state engineer.

Appellant testified that the well from which he is irrigating the lands involved was drilled in 1942 or 1943 and he knew when it was drilled but was uncertain as to the year. There has been use and irrigation from an illegal well for more than four consecutive years after 1942 or 1943, and the water right, if it ever existed, has been forfeited. We reaffirm the doctrine laid down in State v. Mitchell, supra.

■ Appellant seeks to distinguish this case from State ex rel. Reynolds v. Mitchell, supra, on the basis that there is a complete lack of evidence of any improper action on the part of appellant, and argues that if there was any unlawful diversion, it had been made prior to the time appellant obtained the land. Our answer to this is that appellant has lived near the land involved for forty-four years. He knew that the well from which he is irrigating the lands involved was drilled in 1942 or 1943, and he also knew at the time, or shortly after he purchased the land, that there was a lawsuit against Mr. Gooden, the person from whom he purchased the land, relative to the water rights. Also, it is the duty of the owner of a water right to comply with the law and the forfeiture of the water right occurred without regard to the intention of appellant or his predecessors in title. Appellant's contention is in the nature of an estoppel, which does not apply to a sovereign state where public waters are involved. State ex rel. Erickson v. McLean, 62 N.M. 264, 308 P.2d 983.

Finding no error in the record, the order of the district court is affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.

MOISE and NOBLE, JJ., not participating.