The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: September 26, 2022

**NO. S-1-SC-37903**

**STATE OF NEW MEXICO ex rel.**
**OFFICE OF THE STATE ENGINEER,**

Plaintiff-Respondent,

v.

**TOBY ROMERO,**

Defendant-Petitioner,

and

**ELEPHANT BUTTE IRRIGATION DISTRICT et al.,**

Defendants.

**ORIGINAL PROCEEDING ON CERTIORARI**
**James J. Wechsler, Presiding Judge**

Domenici Law Firm, P.C.
Peter V. Domenici, Jr.
Reed C. Easterwood
Albuquerque, NM

for Petitioner

New Mexico Office of the State Engineer
Gregory C. Ridgley, General Counsel
Richard Arthur Allen, Deputy General Counsel
A. Nathaniel Chakeres, Deputy General Counsel
Santa Fe, NM

Martha Clark Franks, Special Assistant Attorney General
Fort Collins, CO

for Respondent

**OPINION**

**THOMSON, Justice.**

{1}     According to our Constitution and our courts, beneficial use of water is "the basis, the measure and the limit" of a continued water right. N.M. Const. art. XVI, § 3; *State ex rel. Reynolds v. S. Springs Co.*, 1969-NMSC-023, ¶ 15, 80 N.M. 144, 452 P.2d 478. With that in mind, we answer whether an owner of a groundwater right may forfeit part or all of a claimed water right and whether any use, no matter how small, preserves the right to the whole. Petitioner Toby Romero argues that his use of three acre-feet per year of water preserves the claimed 394.85 acre-feet per year water right. Synchronizing the legislative relationship and legal history of groundwater and surface water forfeiture statutes with a plain reading of our Constitution supports only one conclusion: New Mexico's groundwater forfeiture statute allows for partial forfeiture. *See* NMSA 1978, § 72-12-8(A) (2002) (groundwater forfeiture); NMSA 1978, § 72-5-28(A) (2002) (surface water forfeiture). Accordingly, we conclude that substantial evidence supports the special master's findings of nonuse by Petitioner resulting in forfeiture. The Court of Appeals interpretation of the groundwater forfeiture statute is affirmed, albeit for different reasons. *See State ex rel. Off. of State Eng'r v. Romero*, 2020-NMCA-001, 455 P.3d 860.

## I.    BACKGROUND

{2}    The issue on appeal results from an order in the Lower Rio Grande Adjudication where the Office of the State Engineer (OSE) denied Petitioner's claim of ownership over a water right associated with "railroad operations" (Railroad Right) in the now-defunct town of Cutter.[1] The town of Cutter was established in the late nineteenth century as a mining community. A railroad depot was built around 1880 to facilitate the shipping of ore and cattle. The railroad depot's well (Well) was initially used to supply water to steam engines that powered the trains and was also used to water a local commodity, livestock. Soon after the mines shut down, the railroad depot shut down, and the need for the railroad to use the Well to service the steam locomotives diminished. The railroad's Well use eventually ended in 1960. Soon thereafter, the town of Cutter itself ceased to exist.

{3}    In 1994, the railroad conveyed a parcel of land to Petitioner that included the

---

[1]Petitioner asked this Court to determine if it was appropriate to remand a second issue to the Court of Appeals: whether the Railroad Right, as quantified by the special master, was abandoned. However, Petitioner makes no argument and provides no facts in the briefing to help us answer that question. Accordingly, we do not reach the issue. *Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 10 n.1, 306 P.3d 457.

Well and the water rights associated with the Well.[2] Four years after the railroad's conveyance, Petitioner filed a declaration of water right with the OSE claiming 394.85 acre-feet of groundwater per year for both "railroad and livestock purposes." His calculation of the Railroad Right was based on the "maximum amount of railroad traffic" passing through Cutter during the "peak" of the railroad's operation in 1944. This calculation was grossly different from a hydrographic survey of the Lower Rio Grande Basin conducted three years later, which calculated the Well's usage as three acre-feet per year for livestock watering.

{4}     While awaiting judgment on the Railroad Right, Petitioner was joined in the Lower Rio Grande stream adjudication in 2007. After Petitioner was joined in the stream adjudication but before he received the OSE decision, he attempted to market the Railroad Right in 2009 to the Spaceport America Project and submitted an application to the OSE for change of water usage. The OSE did not reply to his application, and Petitioner eventually withdrew it. In June 2010, Petitioner received an offer of judgment from the OSE finding that Petitioner had no water right.

---

[2]The factual record on which the parties rely involves several transfers of title as well as disputes about whether the Railroad Right was actually included in the land transfer. In addition, the amount of water at issue in the Railroad Right was disputed. However, these are not the central issues of the appeal, and we omit much of the discussion of these issues.

{5}    Petitioner rejected the OSE offer of judgment, and a hearing was set before a special master to determine what water right, if any, Petitioner had. The special master calculated the Railroad Right at 107.53 acre-feet per year and found evidence to support three acre-feet per year usage of water for livestock purposes based on the hydrographic survey and witness testimony. Regarding the use of the water at issue, the special master made two findings. First, "water from the Well was not used between 1960 and June 1, 1965 for any purpose other than to water livestock." Second, "The fact that the Railroad Right was used to water livestock does not prevent forfeiture of the remainder of the right." Finding no evidence of water usage for railroad purposes during these same periods, the special master relied on a Utah case to construe New Mexico's groundwater forfeiture statute to allow for partial forfeiture.

{6}    In reaching these findings, the special master relied in part on Petitioner's expert report, which confirmed that the steam locomotive era ended in 1955. Exhibits also demonstrated that the railroad company in this case had converted from steam to diesel by 1960 and in doing so had closed the Cutter train depot and removed its crews from Cutter. The railroad's "right-of-way map" depicted the Well as "retired in place" as of 1959. The State presented historical records suggesting that "1960 was the last year of regular main line, standard gauge steam operations

4

in the United States." In addition, a witness testified to repairing the Well in the early sixties, "'60 to '64," and stated that it had been "two or three years since it had been run." The witness remarked that the purpose of the repair was not to operate a steam locomotive but so the owner could "water some livestock that he had out there."

{7} Petitioner objected and filed a motion to set aside the special master's report and order recommending only the right to water livestock. He argued that although the water was not used for railroad purposes, it was used for livestock purposes and therefore that this partial use negated forfeiture of the larger Railroad Right. The core of Petitioner's argument is that usage of a three acre-feet per year livestock right preserved a right to seventy percent of his claimed 394.85 acre-feet per year Railroad Right. The district court reviewed the special master's recommendation and concluded that "substantial evidence supports the special master's finding" of nonuse. The district court also accepted the special master's interpretation of the groundwater forfeiture statute that allowed partial forfeiture.

{8} The Court of Appeals affirmed the district court, finding that the special master's reading of the groundwater statute was consistent with legislative intent, our Constitution, and our state's historic approach to the preservation of water, in particular the recognition of partial forfeiture. *See Romero*, 2020-NMCA-001. The Court of Appeals found the statute ambiguous because it "refers to forfeiture of 'the

water rights' without specifying whether such forfeiture may extend to just a portion of an appropriator's water rights." *Id*. ¶ 21. We acknowledge that the statute's varying use of the terms "water," "waters," "water right," and "water rights," creates some ambiguity. *See* § 72-12-8(A). However, we conclude that analysis of the statute to resolve an ambiguity is unnecessary. These terms might refer to each water right by its individual purpose. Or the terms together might refer to a collection of the water rights related to an owner's water permit. We agree with the Court of Appeals that an analysis of legislative intent and history supports a finding that the groundwater forfeiture statute allows for partial forfeiture of water rights. *See Romero*, 2020-NMCA-001, ¶¶ 19-31. However, there is only one constitutionally valid interpretation of these water forfeiture statutes, and that is through the constitutionally acknowledged doctrine of beneficial use.

## II. DISCUSSION

### A. Standard of Review

{9} The purely legal question, whether partial forfeiture exists in our Constitution or by statute, requires de novo review. *State ex. rel. Off. of State Eng'r v. Elephant Butte Irrigation Dist.*, 2012-NMCA-090, ¶ 8, 287 P.3d 324 (citing *City of Santa Fe v. Travelers Cas. & Sur. Co.*, 2010-NMSC-010, ¶ 5, 147 N.M. 699, 228 P.3d 483). The OSE has "the supervision of the apportionment of water in this state." NMSA

1978, § 72-2-9 (1907), in this case in accordance with the groundwater and surface water forfeiture statutes. When, as here, "an agency decision is based upon the interpretation of a particular statute, the court will accord some deference to the agency's interpretation, especially if the legal question implicates agency expertise." *Fitzhugh v. N.M. Dep't of Labor*, *Emp. Sec. Div.*, 1996-NMSC-044, ¶ 22, 122 N.M. 173, 922 P.2d 555. However, the court is not bound by an agency decision and "may always substitute its interpretation of the law for that of the agency[] because it is the function of the courts to interpret the law." *Id*. (internal quotation marks and citation omitted).

{10}   Finally, although this Court reviews the application of statutory provisions de novo, we review the special master's factual findings, which the district court accepted, for substantial evidence. *See State ex rel. Reynolds v. Lewis*, 1973-NMSC-035, ¶¶ 27-28, 30, 84 N.M. 768, 508 P.2d 577.

**B.     Beneficial Use in New Mexico**

{11}   The doctrine requiring beneficial use of water, which forms the foundation of this opinion, originates from territorial legislation. The 1907 water act provides, "All natural waters flowing in streams and water courses . . . belong to the public and are subject to appropriation for beneficial use. . . . Beneficial use shall be the basis, the measure and the limit of the right to the use of water . . . ." 1907 N.M. Laws, ch. 49,

§§ 1, 2. Likewise, our territorial court recognized forfeiture of a water right as an important component of beneficial use:

> [T]he failure to beneficially use all or any part of the water for which a right of use has vested, for the purpose for which it was appropriated or adjudicated, for a period of four years, shall cause the reversion of such unused water to the public, and it shall be regarded as unappropriated public water.

*Hagerman Irrigation Co. v. McMurry*, 1911-NMSC-021, ¶ 4, 16 N.M. 172, 113 P. 823.

{12} The language of Article XVI, Section 3 of the New Mexico Constitution, "Beneficial use shall be the basis, the measure and the limit of the right to the use of water," derives from the 1907 water act. That provision captures the purpose of our water laws, which is "to encourage use and discourage nonuse or waste." *S. Springs Co.*, 1969-NMSC-023, ¶ 15. Our courts recognize that the concept of water forfeiture is itself derived from the beneficial use doctrine because the "continuance of the title to a water right is based upon continuing beneficial use." *Elephant Butte Irrigation Dist.*, 2012-NMCA-090, ¶ 14 (internal quotation marks and citation omitted). The language of both the groundwater and surface water forfeiture statutes concerning beneficial use and reversion of the water to the public after continuous nonuse tracks our Constitution's purposes of encouraging water use and discouraging waste. *See id.* ¶¶ 14-15; *see also, e.g.*, N.M. Const. Art. XVI, § 2 ("The unappropriated water

8

of every natural stream, perennial or torrential, within the state of New Mexico, is . . . subject to appropriation for beneficial use, *in accordance with the laws of the state*." (emphasis added)).

{13} Because beneficial use is a grounding principle in our water law policy, the Court has rejected other theories of water ownership that are incompatible with the beneficial use provision of Article XVI, including theories that ignore the possibility that users can forfeit their rights. For example, in *State ex rel. Martinez v. City of Las Vegas*, this Court declined to recognize a pueblo water right where a successor-in-interest to a colonization pueblo may "take as much water . . . as necessary for municipal purposes" and instead "conclude[d] that . . . rights must be determined by prior appropriation based on beneficial use." 2004-NMSC-009, ¶ 1, 135 N.M. 375, 89 P.3d 47. The Court reasoned that pueblo rights use a nonappropriation-based method of allocating water rights, which creates water rights not measured by beneficial use and contravenes the policies for discouraging nonuse that came from Article XVI. *Id. Martinez* makes clear that forfeiture is an important component of the beneficial use doctrine:

> Forfeiture . . . is an essential punitive tool by which the policy of our constitution and statutes is fostered, and the waters made to do the greatest good to the greatest number. Forfeiture prevent[s] the waste of water—our greatest natural resource. The pueblo right subverts these critical policies.

9

*Id.* ¶ 37 (alteration in original) (internal quotation marks and citations omitted).

{14}    Thus, forfeiture is an essential enforcement mechanism for Article XVI's beneficial use provision. Just as the pueblo rights discussed in *Martinez* contravened the purpose of Article XVI, the groundwater forfeiture statute, if interpreted to disallow partial forfeiture, would subvert enforcement of the critical polices of preventing waste and using water "'to do the greatest good to the greatest number.'" *See Martinez* 2004-NMSC-009, ¶ 36 (concluding that "total loss of use of any amount of water the pueblo might potentially use in the future . . . interferes with the necessity of utilizing water for the maximum benefits"). In addition, there is no distinction between partial forfeiture and forfeiture. Whether a water owner has ceased to use *all* of the water right or has ceased to use *part* of the water right, Article XVI's admonishment is the same: *use* is the *measure* of the right. Allowing use of a three acre-feet per year water right to preserve an unused 394 acre-feet per year water right would subvert Article XVI's requirement that "[b]eneficial use shall be . . . the measure" of a continuing water right. Therefore, for Section 72-12-8(A) to conform to the constitutional requirements of Article XVI, we must interpret the groundwater forfeiture statute to allow for partial forfeiture. Having established the grounding principle of beneficial use, and in particular the role of forfeiture in advancing the

corresponding policy, we turn to the language of the surface water and groundwater acts to complete our analysis.

**C.     Surface Water and Groundwater Acts Are Viewed as a Bundle of Related Rights, and as Such Their Forfeiture Provisions Must Be Read Together**

{15}     The groundwater forfeiture statute at issue reads,

> When for a period of four years the owner of a water right . . . or the holder of a permit from the state engineer to appropriate any such waters has failed to apply them to the use for which the permit was granted or the right has vested, was appropriated or has been adjudicated, the water rights shall be, if the failure to beneficially use the water persists one year after notice and declaration of nonuser given by the state engineer, forfeited and the water so unused shall revert to the public and be subject to further appropriation.

Section 72-12-8(A). A separate statute governs the forfeiture of surface water and contains slightly different language:

> When the party entitled to the use of water fails to beneficially use all or any part of the water claimed by him . . . for a period of four years, such unused water shall, if the failure to beneficially use the water persists one year after notice and declaration of nonuser given by the state engineer, revert to the public and shall be regarded as unappropriated public water.

Section 72-5-28(A). The surface water forfeiture statute explicitly states that failure to use "all or any part of the water claimed" will result in forfeiture of the unused part of the water right. *Id.* Unlike the surface water forfeiture statute, the groundwater forfeiture statute does not explicitly state that "all or any part" of the

11

water left unused will result in forfeiture but rather states, "the water so unused shall revert to the public." *Compare* § 72-12-8(A), *with* § 72-5-28(A). The Legislature's omission of "all or any part of" language invites the argument advanced by Petitioner that the Legislature did not intend to allow for partial forfeiture of a groundwater right. The argument is that the differing language between the groundwater forfeiture statute and the surface water forfeiture statute indicates a legislative intent to treat the two types of water differently when it comes to forfeiture; one theory allows partial forfeiture (surface water) and one does not (groundwater). Petitioner believes that limited use of groundwater for livestock watering preserved the entire Railroad Right as the groundwater forfeiture statute makes no allowance for partial forfeiture.

{16}    If Petitioner's reading of the groundwater forfeiture statute prevails, the statute is placed in direct conflict with the intent and wording of Article XVI. Such a reading would make the statute unconstitutional. We are obliged to follow the "well-established principle of statutory construction that statutes should be construed, if possible, to avoid constitutional questions," *Lovelace Med. Ctr. v. Mendez*, 1991-NMSC-002, ¶ 12, 111 N.M. 336, 805 P.2d 603. In addition, "[w]here a statute is susceptible to two constructions, one supporting it and the other rendering it void, a court should adopt the construction which will uphold its constitutionality." *Benavides v. E.N.M. Med. Ctr.*, 2014-NMSC-037, ¶ 43, 338 P.3d 1265 (internal

12

quotation marks and citation omitted). There is a high bar for unconstitutionality, and a statute "will not be declared unconstitutional in a doubtful case, and . . . if possible, it will be so construed as to uphold it." *Bounds*, 2013-NMSC-037, ¶ 11, (internal quotation marks and citation omitted).

{17} Further, Petitioner's argument that the groundwater and surface water forfeiture statutes must be read as completely distinct contravenes the accepted view that "the Legislature extended the basic principles of the 1907 code to groundwater resources and that the basic scheme, for the management of both surface water and groundwater, is *still* with us today." G. Emlen Hall, *The First 100 Years of the New Mexico Water Code*, 48 Nat. Res. J. 245, 249 (2008) (emphasis added). Practically speaking, the two types of water are interconnected through a constant exchange: surface water seeping into the ground, and groundwater percolating to the surface. *See* Stephen J. Vandas et al., *Water and the Environment*, 26 (American Geologic Institute 2002). This interaction is reflected by New Mexico's "long and strong tradition of the coordination of ground and surface water rights." Jason Anthony Robison and Anthony Dan Tarlock¸ *Law of Water Rights and Resources* § 6:30, at 467 (2020) (explaining that in New Mexico administrative officials measure the impact of groundwater pumping on surface flows). Starting with the 1907 water act and confirmed by the territorial Supreme Court in *Hagerman Irrigation Co.*, 1911-

NMSC-021, ¶ 4, doctrines of both prior appropriation and beneficial use have applied to surface waters. Later, the Legislature applied these same doctrines to groundwater through the 1927 groundwater code, 1929 NMSA, §§ 151-201 to -205 (1927). *See* 1927 N.M. Laws, ch.181, §§ 1-5. This Court concluded that the application of beneficial use and prior appropriation to groundwater was "merely declaratory of existing law." *Yeo v. Tweedy*, 1929-NMSC-033, ¶¶ 7-8, 34 N.M. 611, 286 P. 970 (determining the groundwater code to be unconstitutional for technical reasons but deciding that the code was "merely declaratory of existing law"). In 1958 while interpreting the state engineer's power to consider prior appropriations, this Court applied the doctrine of surface water connectivity. *Templeton v. Pecos Valley Artesian Conservancy Dist.*, 1958-NMSC-131, ¶¶ 33-34, 47, 65 N.M. 59, 332 P.2d 465. This doctrine allows for the tracing of an appropriation of surface water to its source, underground streams. *Id*. Later, in 1961, the Court applied an analogous doctrine to groundwater even though there was no statutory equivalent within the groundwater code. *See State ex rel. Reynolds v. Mendenhall*, 1961-NMSC-083, ¶ 19, 68 N.M. 467, 362 P.2d 998. The *Mendenhall* Court confirmed the connectivity of groundwater and surface water recognized in *Yeo*, stating that "ground water in its use, appropriation and administration is affected with all the incidents of surface

14

waters, except for differences necessarily resulting from the fact that it is found below the surface." 1961-NMSC-083, ¶ 19.

{18}    Although the language of the groundwater forfeiture statute does not track the language of the surface water forfeiture statute, "its history and background reveal a legislative intent to provide for partial forfeiture." *Romero*, 2020-NMCA-001, ¶ 27. Petitioner's argument is directly contrary to our established view that "[t]here does not exist one body of substantive law relating to appropriation of stream water and another body of law relating to appropriation of underground water." *City of Albuquerque v. Reynolds*, 1962-NMSC-173, ¶ 28, 71 N.M. 428, 379 P.2d 73. Two water codes, one governing surface water and the other groundwater, do not "imply a legislative intention that subsequent statutes dealing with underground waters are to be . . . treated entirely separate and apart as though dealing with two entirely different subjects." *Id*.

{19}    It is clear that, through the course of interpretation of various groundwater statutes, this Court has looked to the Legislature's policies for managing surface water for guidance. The legal and legislative relationship between groundwater and surface water, in addition to the constitutional requirement that water rights be measured by beneficial use, supports the Court of Appeals interpretation that the groundwater forfeiture statute allows partial forfeiture. Additionally, although the

difference between the two statutes could evidence that the Legislature intended the groundwater and surface water codes to accomplish different purposes, Petitioner does not assert any cognizable purpose or present any evidence that the Legislature intended that groundwater and surface water be treated differently for purposes of forfeiture.

{20} Having established that partial forfeiture of groundwater rights is allowable, we now address Petitioner's alternative argument that forfeiture should not apply in this case because it is only meant to serve as a penalty for deliberate waste or unauthorized water use. Finally, we examine the special master's finding of nonuse and forfeiture.

**D.    Forfeiture Is Allowed for Nonuse, Not Just for Unauthorized Use or Deliberate Waste**

{21} "[T]he continuance of the title to a water right is based upon continuing beneficial use, and where the right is not exercised for a certain period of time (four years), the statute declares that the right to the unused portion is forfeited." *S. Springs Co.*, 1969-NMSC-023, ¶ 9. There is no basis for Petitioner's argument that forfeiture is a penalty reserved for unauthorized use of water or deliberate waste. To the contrary, nonuse is one of the actions penalized by the forfeiture statute. For example in *S. Springs Co.*, the owners of the water right failed to obtain use of their claimed water for at least thirty years. *Id.* ¶ 8. This Court clarified that "forfeiture as applied

16

to water rights . . . is the penalty fixed by statute for the failure to do . . . certain acts tending toward the consummation of a right within a specified time[] or . . . the failure to use the same for the period specified by the statute." *Id.* ¶ 9 (internal quotation marks and citation omitted). It is clear from *S. Springs Co.* and other related cases that forfeiture is not only a punishment for bad acts like waste or unauthorized use of water but also a penalty for the failure of a water owner to put the water to beneficial use. *See id.*; *see also Elephant Butte Irrigation Dist.*, 2012-NMCA-090, ¶¶ 16-17 (applying the forfeiture statute to more than four consecutive years of nonuse); *State ex rel. Reynolds v. Fanning*, 1961-NMSC-058, ¶¶ 6, 15, 68 N.M. 313, 361 P.2d 721 (applying the forfeiture statute to irrigation for more than four consecutive years from an unapproved well); *State ex rel. Erickson v. McLean*, 1957-NMSC-012, ¶¶ 23-26, 62 N.M. 264, 308 P.2d 983 (applying the forfeiture statute to more than four years of nonbeneficial usage—or "continuous nonuse[] through waste"). Forfeiture as a penalty for nonuse is not a new concept or a new way of applying the forfeiture statute. Even in the early forfeiture cases, it is plainly stated, "Nonuse involves forfeiture. A great natural public resource is thus both utilized and conserved." *Yeo*, 1929-NMSC-033, ¶ 20. Therefore, we hold that if the special master properly found nonuse, the forfeiture statute applies to Petitioner's water right.

**E.    The Special Master's Findings Are Supported by Substantial Evidence**

{22}    In this case, the special master found that the Well had not been "used between 1960 and June 1, 1965 for any purpose other than to water livestock." The finding of more than four years of nonuse was supported by substantial evidence, including railroad logs, witness testimony, and historical evidence regarding the decline of the town of Cutter. The evidence described earlier in this opinion included exhibits demonstrating that the railroad had converted from steam to diesel by 1960. Historical records revealed that 1960 was the last year of steam operations in the United States. The railroad's "right-of-way" map depicted the Well as "retired in place" as of 1959. While a witness testified to repairing the Well in the early sixties, "'60 to '64," the same witness testified that it had been "two or three years since it had been run" and that the purpose of the repair was so the owner could "water some livestock that he had out there." The records and accounts taken together show that substantial evidence supported a finding of nonuse. Nonuse, as we have said previously, led to forfeiture.

**III.    CONCLUSION**

{23}    The special master correctly construed the meaning of Section 72-12-8(A) to allow for partial forfeiture. The Court of Appeals was correct in finding that the statute was ambiguous and that the historical relationship between the surface and

18

groundwater forfeiture statutes supported a harmonious reading of the statutes. However, we stress that the beneficial use doctrine, enshrined in Article XVI, Section 3 of the New Mexico Constitution, mandates that continuous beneficial use be "the basis, the measure and the limit of the right to the use of water" and that water not subject to beneficial use reverts to the public and is subject to appropriation by the state. As such, beneficial use requires that Section 72-12-8(A) allow for any portion of unused water to return to the public and be subject to appropriation by the state. Therefore, we affirm.

{24}    **IT IS SO ORDERED.**

_____<br>**DAVID K. THOMSON, Justice**

**WE CONCUR:**

_____<br>**C. SHANNON BACON, Chief Justice**

_____<br>**BRIANA H. ZAMORA, Justice**

_____<br>**FRANCIS J. MATHEW, Judge**<br>**Sitting by designation**

_____

**ERIN B. O'CONNELL, Judge**
**Sitting by designation**